KISNER *v.* JACKSON.

(Division A. Jan. 26, 1931. Suggestion of Error Overruled Mar. 9, 1931.)

[132 So. 90. No. 28941.]

**B. H. Loving,** of West Point, for appellant.

**Frank A. Critz,** of West Point, for appellee.

**Griffith, J.,** delivered the opinion of the court.

Appellant was injured by the breaking of a belt, alleged to have been at the time defective and dangerous, in a hardwood mill owned by appellee, who was doing business under the name and style, West Point Spoke Company. The defense mainly relied upon, and upon which the court acted in granting a peremptory instruction for the defendant, was that the mill was being at the time operated by J. A. Johnson as an independent contractor, and that appellant was the employee of Johnson, and not of appellee.

The contract between Johnson and appellee reads as follows:

"Whereas the West Point Spoke Co., is the owner of a certain saw mill and equipment located about nineteen

miles north west of West Point near the Langford place, and whereas J. A. Johnson desires to lease the mill and equipment to operate the same as a spoke and saw mill, it is hereby agreed by and between the said parties that the said West Point Spoke Co., does hereby lease to J. A. Johnson the above mill.

"The said J. A. Johnson is to manufacture the logs or blocks that are put on the yard by the West Point Spoke Co., into spokes or dimension stock, in such sizes or dimensions as may be desired by the West Point Spoke Co., and to deliver the same to R. R. at the point shipment desired, at such price as may be agreed upon.

"The said West Point Spoke Co., agrees to furnish the said J. A. Johnson money each two weeks for his pay roll and to charge him with same and deducting it from amount due said J. A. Johnson for manufacturing the spokes or dimension stock.

"The said J. A. Johnson, for the use of said above described mill binds himself to manufacture all the timber delivered on the yard by West Point Spoke Co.

"It is furthermore agreed that the West Point Spoke Co., is in no manner liable for any wages or hire of any of the employees in the operation of said business and is in no manner liable for any accidents or injuries resulting to anyone in the operation of said business.

"This contract is to remain in force as long as the same is agreeable and satisfactory to both parties.

"Witness our hand in duplicate November 15th, 1926.

"West Point Spoke Co.,
"J. A. Johnson."

There have been many attempts to define precisely what is meant by the term "independent contractor;" but the variations in the wording of these attempts have resulted only in establishing the proposition that it is not possible within the limitations of language to lay down a concise definition that will furnish any universal

formula, covering all cases. At last, and in any given case, it gets back to the original proposition whether in fact the contractor was actually independent. In our own more recent cases, it has been said that the important tests are whether the alleged "independent contractor is one who renders service in the course of an occupation representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished," and that he is not a master who has no "right to control the servant; and who is interested in the ultimate result of the work alone as a whole, but not in the details of the performance;" and that "the main element required to constitute the relationship of master and servant is that the servant be subject to the control of the master in carrying on the business at the time of the injury." Hutchinson-Moore Lbr. Co. v. Pittman, 154 Miss. 1, 122 So. 191, 193; Caver v. Eggerton, 157 Miss. 88, 127 So. 727. But since these statements or definitions refer to the "will of the employer" and to the "control" by the master, we are returned again to the original proposition whether in a given case the alleged independent contractor is in fact independent, free of the will of his employer—actually and substantially free from his control.

There are several tests to be applied, the weight of each, and whether much or little, rising and falling in the scale as it may or may not be counterbalanced by one or more of the remaining tests, present in the particular case in hand. For this reason these tests cannot be stated in any precise order of importance, but they are as follows: Whether the principal master has the power to terminate the contract at will; whether he has the power to fix the price in payment for the work, or vitally controls the manner and time of payment; whether he furnishes the means and appliances for the work; whether he has control of the premises; whether he

furnishes the materials upon which the work is done and receives the output thereof, the contractor dealing with no other person in respect to the output; whether he has the right to prescribe and furnish the details of the kind and character of work to be done; whether he has the right to supervise and inspect the work during the course of the employment; whether he has the right to direct the details of the manner in which the work is to be done; whether he has the right to employ and discharge the subemployees and to fix their compensation; and whether he is obliged to pay the wages of said employees. These are the tests, as we think, and any other, if differently stated, may be brought within one of those above briefly set out. 14 R. C. L., pp. 67-76; 31 C. J., pp. 473-475; 39 C. J., pp. 1316-1323.

Examining the quoted contract in the light of these tests, it is at once perceived that there is a considerable preponderance in weight against the contention that there is here presented a case of an independent contractor. Some courts hold that the potential control given in the power to terminate the contract at will is conclusive of the question. See authorities cited in 20 A. L. R., page 761 et seq. We do not agree that this is a controlling element; yet, when it is taken in connection with the other features of potential control presented under this contract, we are of opinion that there is no independent contractor in this case, although the case is not free from difficulty, and there is strong argument for the opposite view. And amid the combination of circumstances or tests here present we are the more strongly impressed, in so far as this particular case is concerned, with that provision of the contract providing that the remuneration for the work should be "at such price as may be agreed upon," it being noted in addition that the time or times for payment are left only to inference. Under such a contract, in view of the various provisions

thereof, and looking to all the surrounding circumstances, it would be easily possible that, in payment, the principal employer could compute and pay as the price of the work all the expenses thereof, including wages, in such amounts as deemed reasonable by him, plus an adequate salary to the alleged independent contractor, whereby the latter would plainly be a mere foreman or superintendent of the mill rather than an independent contractor, as is attempted to be made to appear on paper. This, if countenanced, would practically circumvent that great and abiding principle of the law that the master, the real master, shall respond in damages for any negligent injury to a servant. Contracts, as written including what may be done under them as written, must be kept within the established public policy of the state. It is not what the employer does under a contract such as this that is determinative of its effect, it is what he may do under it. 39 C. J., pp. 1316-1317.

We are of the opinion therefore that the peremptory instruction was erroneous, and that the question of negligence, and the other questions in the case, should be submitted to a jury.

Reversed and remanded.