## Benjamin *v.* Davidson-Gulfport Fertilizer Co.

(Division B. Feb. 19, 1934. Suggestion of Error Overruled Mar. 19, 1934.)

[152 So. 839. No. 31071.]

Graham & Graham and **Bidwell Adam,** all of Gulfport, for appellant.

Leathers & Greaves, of Gulfport, for appellee.

**Anderson, J.,** delivered the opinion of the court.

Appellant brought this action against appellee on behalf of herself and her seven minor children for damages for the death of her husband, Herbert Benjamin, alleged to have been caused by appellee's negligence while he was engaged in appellee's service. At the conclusion of appellant's evidence, the court, on motion, directed a verdict in favor of appellee; judgment was accordingly entered; from which judgment appellant prosecutes this appeal.

The declaration is in two counts. Both counts charge that the deceased, with others, was employed by appellee to unload a car of phosphate rock dust and dump it

into appellee's mixing pit; that the unloading of the car caused a thick cloud of the dust, which was necessarily inhaled by Herbert Benjamin while doing the work to the extent that it caused him to have bronchial pneumonia, resulting in his death. One count based recovery on the failure of appellee to furnish the deceased with a respirator to protect him against breathing the dust. The other count was based on the failure of appellee to provide the deceased with a reasonably safe place in which to work, alleging that the car should have been made reasonably safe by proper ventilation.

There was little, if any, substantial conflict in the material evidence. The deceased and three others were employed by Mr. Paggett, appellee's foreman, to unload a box car filled with phosphate rock dust and to convey the dust to appellee's mixing pit some fifty feet away. Appellee's foreman furnished them with shovels and a push cart, all of which belonged to appellee, and directed them to unload the car and place its contents into the mixing pit. He agreed to pay them two dollars and sixty cents jointly for the work. The deceased had never worked for appellee before. He worked in the car, shoveling the dust into the push cart, from nine o'clock in the morning until two-thirty in the afternoon, when his nose began to bleed. About the same time he began to cough up blood. This was caused by inhaling the dust. The work caused a thick cloud of dust to fill the entire car, so thick that those engaged in the work could hardly see what they were doing. Two of the other men employed were overcome from inhaling the dust and had to quit work before the car was unloaded. Benjamin became so ill that he had to be carried home; he could not walk that distance. He continued to bleed from the nose and cough up blood until he died the following Sunday. He died of bronchial pneumonia.

Dr. McDevitt testified that he saw the deceased on Wednesday after the Monday on which the car was un-

loaded. He said that the phosphate rock dust was irritable to the lungs, and that the probability was that the bronchial pneumonia from which Benjamin died was caused by inhaling the dust.

R. D. Reed, who, according to his evidence, had had a large experience in construction work, testified that in order to protect workers in confined dust against the ill effects thereof it was necessary, and was the customary thing among employers, to furnish them with respirators; that the usual respirator is for the protection of the nose and mouth, "with a piece that fits in the mouth; two pieces around the head, and a wet sponge inserted in it, and ventilation comes through it and he breathes the pure air." He also testified that these respirators were inexpensive, costing not more than one dollar each.

The court excluded appellant's evidence and directed a verdict for appellee upon the ground that the deceased was an independent contractor and not an employee of appellee; in other words, that the relation of master and servant did not exist between the deceased and appellee.

Often the line of demarcation between an independent contractor and a servant is very shadowy, so much so that it is difficult to define. However, we are of opinion that the facts of this case bring the relation between Benjamin and appellee well within the definition of what constitutes master and servant. An "independent contractor" is one who renders service in the course of an occupation representing the will of his employer only as to the result of his work and not as to the means by which it is accomplished. Hutchinson-Moore Lumber Co. v. Pittman, 154 Miss. 1, 122 So. 191; New Orleans, B. R., V. & M. Railroad Co. v. Norwood, 62 Miss. 565, 52 Am. Rep. 191; Callahan Construction Co. v. Rayburn, 110 Miss. 107, 69 So. 669. In Kisner v. Jackson, 159 Miss. 424, 132 So. 90, 91, the court said that in determining this question one of the elements for consideration

was whether the one contracting to have the work done "furnishes the means and appliances for the work." The evidence in this case showed that the deceased and his coemployees were furnished all tools, appliances, and equipment with which to unload, load, and dump the rock dust into the mixing pit.

In Harper v. Wilson, 163 Miss. 199, 140 So. 693, the court held that a cotton picker employed to pick cotton at so much a hundred pounds was a servant and not an independent contractor.

It is true that the deceased was engaged in piece work. He was employed to do that particular job and nothing more. Nevertheless, the entire work, as stated, was carried on with tools and equipment furnished by appellee, and the deceased had no discretion as to whether he would use them or not. The fact alone that it was piece work is not determinative of the question whether the deceased was a servant or an independent contractor; other considerations must be added to that fact. A piece worker may be an independent contractor, or he may be a servant. It appears that the courts generally have put that construction upon the Workmen's Compensation Act. McKinstry v. Guy Coal Co., 116 Kan. 192, 225 Pac. 743, annotations to that case as reported in 38 A. L. R. 837-845.

We are also of opinion that the evidence was sufficient to go to the jury on the issue of negligence, and whether the alleged negligence was the proximate cause of the illness which resulted in the death of the deceased. Putting it differently, it was a question for the jury whether appellee knew, or by reasonable care should have known, that the inhaling of the dust was injurious, and whether appellee, in the exercise of reasonable care, should have known that the furnishing of a respirator or other protection would have prevented the injury.

Reversed and remanded.