Kughn *v*. Rex Drilling Co., et al.

May 4, 1953

No. 38730 30 Adv. S. 6 64 So. 2d 582

*R. L. Netterville,* for appellant, argued that

*Butler, Snow & O'Mara,* for appellee Zack Brooks Drilling Company.

*Watkins & Eager*, for appellee Rex Drilling Company.

Kyle, J.

This case is before us on appeal by Mrs. William B. Kughn, Sr., from a judgment of the circuit court of Franklin County affirming an order of the Mississippi Workmen's Compensation Commission disallowing the appellant's claim against the Rex Drilling Company and the Zach Brooks Drilling Company and their insurance carriers for compensation under the Mississippi Workmen's Compensation Act on account of the death of her husband.

The record shows that the deceased, William B. Kughn, Sr., at the time of his death on October 2, 1951, was employed by the Rex Drilling Company as its production superintendent in Adams County. The Rex Drilling Company was engaged in the operation of several producing oil wells in the LaGrange Field near Natchez, and Kughn, as production superintendent, was required to check the production of each well and to make daily reports to his employer. Kughn was a full time employee of the company and was paid a regular salary of $400 per month. He was furnished an automobile for use by him in the performance of his duties.

Kughn was also an experienced cable splicer, and as a side line Kughn spliced cables for drilling companies that might be in need for such service. Cable splicing could be done only by a workman who was specially skilled in that kind of work. Drilling companies had only an occasional need for the services of a cable splicer; but when a cable needed splicing, the need was urgent. Kughn's duties as production superintendent for the Rex Drilling Company were not exacting and he was able to splice cables when called on to do so without neglecting the duties of his regular employment. The claimant herself testified that Kughn handled on an average about three jobs each month, which provided a substantial supplement to the salary paid to him by his regular employer. The Rex Drilling Company had no knowledge of the fact that Kughn spliced cables for other companies from time to time while he was working for the Rex Drilling Company.

D. D. Slack was tool pusher for the Zach Brooks Drilling Company. A few days before his injury Kughn told Slack that if he had a splicing job that he needed to have done he would like to do the work. Kughn had spliced cables for Slack at other times, but had never done any work for the Zach Brooks Drilling Company. On October 2, 1951, Slack notified Kughn that he had a cable splicing job for him, and after completing his daily round

of inspection for the Rex Drilling Company, Kughn during the early afternoon drove to the drilling site of the Zach Brooks Drilling Company in Franklin County for the purpose of splicing the cable for the Zach Brooks Drilling Company. Kughn carried his own tools with him. He was accompanied on the trip by his nephew, Melvin Kughn, who was interested in learning how to splice cables. When Kughn arrived at the drilling site, the driller in charge detailed three roughnecks to help Kughn lay out the cable. One of these roughnecks remained with Kughn until the job was completed. When Kughn had the job about half finished he began to get sick and started to sweating. He stopped a few minutes and rested. But after a few minutes rest he resumed his work and completed the job. He and Melvin Kughn then got in the automobile, which was owned by the Rex Drilling Company, and drove back to Natchez. Melvin Kughn drove the car. While they were on the return trip to Natchez, Kughn became unconscious and died about the time they arrived at the doctor's office in Natchez. The doctor testified that Kughn had been suffering from high blood pressure and an enlarged heart, and that Kughn's death was caused by a cerebral hemorrhage.

The appellant filed a claim against the Rex Drilling Company and the Zach Brooks Drilling Company and their insurance carriers. The claim was heard before the attorney-referee, and the attorney-referee entered an order denying compensation. The attorney-referee found that Kughn died from a cerebral hemorrhage brought on by exertion while splicing a cable for the Zach Brooks Drilling Company in Franklin County; that the deceased's illness and death did not arise out of and in the course of his employment with the Rex Drilling Company, for the reason that he had temporarily left his regular employment and the area where he was required to work and was splicing a cable in Franklin County for the Zach Brooks Drilling Company without the knowl-

edge or consent of the Rex Drilling Company. The attorney-referee also found that the deceased was not an employee of the Zach Brooks Drilling Company at the time of his illness and death, but was an independent contractor doing a specific piece of work for an agreed sum of money to be paid to him by the Zach Brooks Drilling Company; and that his death was not compensable under the Mississippi Workmen's Compensation law.

The decision of the attorney-referee was affirmed by the commission on May 19, 1952, and the orders of the attorney-referee and the commission denying the appellant's claim were affirmed by the circuit court on August 27, 1952.

The attorney for the appellant contends on this appeal that the attorney-referee and the compensation commission erred in holding that the deceased was not an employee of the Zach Brooks Drilling Company at the time of his injury within the meaning of the Mississippi Workmen's Compensation Act, but an independent contractor. The appellant's attorney also contends that, in the event the court should hold that the deceased was an independent contractor and not an employee of the Zach Brooks Drilling Company, at the time of his injury, then, in that event, the court should hold that the deceased at the time of his injury was still an employee of the Rex Drilling Company and that his injuries are compensable by virtue of that employment.

After a careful study of the record we are of the opinion that the findings of the attorney-referee and the compensation commission are amply supported by the testimony of the witnesses, and that the judgment of the lower court should be affirmed.

In the case of Carr v. Crabtree, et al., 212 Miss. 656, 55 So. 2d 408, the Court held that, █ in determining whether a person was an employee or an independent contractor under the Workmen's Compensation Act, the

ordinary common law tests should be applied as in actions of tort.

There are many definitions of the term "independent contractor" in the reported cases. But the courts have been unable to lay down a concise definition of the term that will furnish an accurate test to be applied in all cases involving the employment status of a person employed to perform service for another. One of the most frequently quoted definitions is to the effect that an independent contractor is one who, in exercising an independent employment, contracts to do certain work according to his own methods, and without being subject to the control of his employer, except as to the product or result of his work. 27 Am. Jur., p. 481, Independent Contractors, par. 2. And, in the case of Crosby Lbr. & Mfg. Co., et al., v. Durham, 181 Miss. 559, 169 So. 285, this Court quoted with approval paragraphs 2 and 3 of the following statement of the master, servant and independent contractor relationship appearing in A. L. I., Restatement of the Law of Agency, Sec. 2, p. 11:

"(1) A master is a principal who employs another to perform service in his affairs and who controls or has the right to control the physical conduct of the other in the performance of the service.

"(2) A servant is a person employed by a master to perform service in his affairs whose physical conduct in the performance of the service is controlled or is subject to the right to control by the master.

"(3) An independent contractor is a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking."

In discussing the tests to be applied in determining whether the relationship of the person employed is that of a servant or an independent contractor, this Court in the case of Kisner v. Jackson, 159 Miss. 424, 132 So. 90, said:

"In our own more recent cases, it has been said that the important tests are whether the alleged 'independent contractor is one who renders service in the course of an occupation representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished,' and that he is not a master who has 'no right to control the servant; and who is interested in the ultimate result of the work alone as a whole, but not in the details of the performance;' and that 'the main element required to constitute the relationship of master and servant is that the servant be subject to the control of the master in carrying on the business at the time of the injury.' Hutchinson-Moore Lbr. Co. v. Pittman, 154 Miss. 1, 122 So. 191, 193; Caver v. Eggerton, 157 Miss. 88, 127 So. 727."

Larson, in his treatise on the Workmen's Compensation Law, par. 43.10, says:

"In determining whether one acting for another is a servant or an independent contractor, the following matters of fact, among others, are considered:

"(a) the extent of control which, by the agreement, the master may exercise over the details of the work;

"(b) whether or not the one employed is engaged in a distinct occupation or business;

"(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

"(d) the skill required in the particular occupation;

"(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

"(f) the length of time for which the person is employed;

"(g) the method of payment, whether by the time or by the job;

"(h) whether or not the work is a part of the regular business of the employer; and

"(i) whether or not the parties believe they are creating the relationship of master and servant."

Larson says, however, that "On only one point as to the relative weight of the various tests is there an accepted rule of law: it is constantly said that the right to control the details of the work is the primary test. Beyond this no one has attempted to provide any formula for assessing the weight of the other factors." Larson, after discussing the other factors mentioned above, suggests another test which he thinks might be applied in a case of this kind to distinguish an employee relationship from that of an independent contractor, namely, the relative nature of the work test, which brings under review the nature of the claimant's work in relation to the regular business of the employer. Larson, par. 43.52.

But whether we apply the control test or the relative nature of the work test suggested by Larson to the facts in the case that we now have before us, it is clear that Kughn's relationship to the Zach Brooks Drilling Company was that of an independent contractor. Kughn held himself out to the public as an expert in splicing cables used in drilling operations. Kughn, according to the testimony, fixed his own price for mending a cable. Slack testified that he had employed Kughn to repair cables at other times during the last several years; but Kughn had done no other work for the Zach Brooks Drilling Company. The job that Kughn performed for the Zach Brooks Drilling Company on October 2, 1951, constituted no part of the regular business of the Zach Brooks Drilling Company. It was the kind of job that had to be done only at unpredictable intervals. The time required to do the work was only about two hours; but it was necessary that a specialist be called in to make the repairs.

The testimony shows that the Zach Brooks Drilling Company furnished Kughn a helper to enable him to

handle the cable and make the repairs. But Kughn had absolute control of himself and the helper in performing the work. He was free to proceed with the work in accordance with his own ideas. He was not subject to any supervision or control by the company in his performance of the work. Slack, the tool pusher, made the arrangement with Kughn to splice the cable. Slack was not at the drilling site when Kughn arrived to do the work. Slack came to the drilling site while Kughn was working at the job, but did not remain there for the purpose of supervising the work. The proof shows that the driller, in a drilling operation, is next in authority to the tool pusher, and represents the company when the tool pusher is absent. Kughn's nephew testified that the driller inspected the work from time to time, and had the right to control Kughn and his helper while the work was being done. But there is no substantial evidence in the record to show that the driller undertook to exercise control over the details of Kughn's work. Slack testified that he was "top kick around the rig", and that he had control of the hiring and firing of all the men under him; and Slack stated that he gave Kughn no instructions concerning the details of the work, and that he did not undertake to control Kughn's actions while he was splicing the cable. Slack said: "I hired a man to do the job. I wouldn't tell him how to do it. If I could do it, I would do it myself." It is clear from Slack's testimony that the Zach Brooks Drilling Company was interested only in the overall result of Kughn's work, and not in the details of the work itself.

Floyd Carlock, a witness for the claimant, who had had seven years experience in the oil fields, was asked the question whether the tool pusher ever checked a line splicer's work while it was being done. His answer was "They check it afterwards, as you get it spliced. . . . If its not satisfactory work, he has to do it over." George Luther Fife who had spliced cables himself, also testified

as a witness for the claimant, and he stated that the tool pusher had the right to supervise the line splicer; but upon being questioned more closely he admitted that the tool pusher would not have the right "to tell you how to put the tucks in." Fife also said that "They never told me how to make the tucks." The proof shows, as stated above, that Kughn furnished his own tools; that he began the work when it suited him; and that when he had finished the job, he presented his bill and left. Kughn was not carried on the payroll of the Zach Brooks Drilling Company as an employee of that company and no deductions were made from his pay check for social security or income taxes.

Larson says that, "Ordinarily, when the job to be done is one that becomes necessary at unpredictable intervals, and when it is not a protracted one, a specialist called in to handle the particular repair or installation is an independent contractor." Larson's Workmen's Compensation Law, Vol. 1, p. 673, par. 45.31 (b).

All of the above mentioned facts point to the conclusion that Kughn was an independent contractor engaged in rendering a special service to the Zack Brooks Drilling Company and that while engaged in performing that service he represented the will of his employer only as to the result to be accomplished, and not as to the means by which it was to be accomplished. Bennett v. Truebody, 66 Cal. 509, 6 P. 329, 56 Am. Rep. 117; Litts v. Risley Lumber Co., 224 N. Y. 321, 120 N. E. 730, 19 A. L. R. 1147; Haller v. Dept. of Labor and Industries, 13 Wash. 2d 164, 124 P. 2d 559; Taylor v. Horning, 240 Iowa 888, 38 N. W. 2d 105; Larson's Workmen's Compensation Law, Vol. 1, p. 673, par. 45.31 (b); Callahan Construction Company v. Rayburn, 110 Miss. 107, 69 So. 669; Kisner v. Jackson, supra; Cook, et al. v. Wright, 177 Miss. 644, 171 So. 686; Crosby Lbr. & Mfg. Co. v. Durham, supra; Carr v. Crabtree, et al., supra, and cases cited. And under the authorities cited, there was no error in the action of the attorney-referee and the com-

pensation commission in denying the appellant's claim against the Zach Brooks Drilling Company.

It is clear that Kughn's illness and death did not arise out of or in the course of his employment by the Rex Drilling Company; and there was likewise no error in the action of the attorney-referee and the commission in denying the claim against the Rex Drilling Company.

The judgment of the lower court is therefore affirmed. Affirmed.

*Roberds, P. J.,* and *Lee, Arrington* and *Ethridge, JJ.,* concur.