COBB, et al. *v.* VICKSBURG HARDWOOD CO.

Nov. 23, 1953

No. 38896          44 Adv. S. 12          68 So. 2d 98

*Brunini, Everett, Grantham & Quin,* Vicksburg, for appellant Mrs. Jennie Hill Cobb.

830

*Ramsey & Ramsey, John W. Prewitt,* Vicksburg, for appellant Horace F. Van Dyke.

*Watkins & Eager,* Jackson; *Dent, Ward & Martin,* Vicksburg, for appellee.

ROBERDS, P. J.

Appellants, by separate actions in the circuit court, sought to recover damages resulting to Mr. Van Dyke from the death of his wife, and to Mrs. Cobb for her own personal injuries, all caused, as alleged by plaintiffs, by the negligence of Reuben Johnson, servant of appellee, in the manner of driving of a trailer-truck.

The two cases involve the same facts except as to the extent of the injuries. By agreement they were combined and heard together in the lower court and they are so considered and decided here.

The trial judge directed the jury to return verdicts for defendant. That was done and judgments were entered accordingly. That action of the trial court was upon the assumption that Johnson, the truck driver, was the servant of C. M. Thornton, an independent contractor, and not the servant of appellee. The only question presented on this appeal is the correctness of that action.

As to whether there was or was not negligence on the part of Johnson, causing the injuries, we need only say that about two o'clock in the afternoon of November 22, 1949, he was driving a truck with a trailer attached thereto. He had delivered a load of logs to the yards of appellee near Vicksburg and was returning his empty truck for another load of logs. He was traveling east. Mrs. Van Dyke and Mrs. Cobb, who were sisters, were traveling west in Mrs. Van Dyke's automobile. The trailer to the truck and the automobile collided at, or near, the west end of a bridge in Big Black River bottom, causing the death of Mrs. Van Dyke and injuries to Mrs. Cobb. The trailer-truck was the property of Thornton. Plaintiff claims the collision was the result of negligent driving on the part of Johnson. Defendant claims Johnson was not negligent. ■■■ It is enough to say that would have been a question for the jury.

On the question whether Thornton was, or was not, an independent contractor, and whether Johnson was his

servant or the servant of appellee, these are the pertinent facts disclosed by the testimony, as they may or may not be modified, in substance or effect, by the contentions of appellants as hereinafter set out and discussed:

Appellee was the owner of certain standing timber located on two tracts of land, the Brasfield and Birdsong lands. Thornton was cutting and removing timber from the Birdsong land when the accident occurred, so we need refer only to the terms of the deed to appellee to the Birdsong timber. That tract consisted of 601 acres. The deed conveyed to appellee the standing timber. thereon fourteen inches in diameter measured sixteen inches from the ground, excepting from the deed certain specified kinds of timber. Appellee was given the right of ingress and egress to cut and remove the timber, which was to be done on or before December 31, 1953. The deed imposed liability upon the grantee for injury to timber not conveyed, either of smaller size than that conveyed or the kinds expressly excepted.

C. M. Thornton had had considerable experience in felling timber and cutting it into logs and removing and hauling the logs. He and the Vicksburg Hardwood Company entered into an oral agreement under which Thornton was to cut into logs timber on the Brasfield and Birdsong places and haul the logs and deliver them onto the yards of the Hardwood Company near Vicksburg, Mississippi. Thornton was to hire and pay his own labor; furnish his own tools, appliances and vehicles for such cutting and transportation. The logs were to be cut into lengths and sizes as desired by appellee, and, of course, only such timber was to be cut and removed as was conveyed to appellee by its deed. Thornton was to be paid at the end of each week on a footage basis for the logs delivered on the yards of appellee that week, after the footage had been ascertained by proper scalage and measurements of the delivered logs. Thornton was to be paid $21 per thousand feet for the logs cut and delivered from

the Brasfield tract and $23 per thousand feet for those cut and delivered from the Birdsong land, the Brasfield tract being the nearer of the two tracts to the yards of appellee.

Thornton entered upon the performance of this contract in October 1948, and so continued until March 1951. He employed, paid and discharged his labor. He furnished the tools, appliances, equipment and vehicles for cutting and removing the logs, and paid all expense of such transportation. He personally directed how the work should be done and appellee had nothing to do with that unless what is said hereinafter alters the stated facts. He was paid as agreed, the statements all being made out in his name and the payments being made either to him or to his wife (and one or two checks being to finance companies) accordingly as he gave instructions and directions to appellee. Specifically, as to Johnson, the truck driver, he had been working for Thornton some four years, and there is no claim that appellee had anything whatever to do with the hiring or paying of Johnson or any direction over him as to the manner of operating the truck.

In Crosby Lumber & Mfg. Company v. Durham, 181 Miss. 559, 179 So. 285, this Court defined a servant and an independent contractor in these words: ''A servant is a person employed by a master to perform service in his affairs whose physical conduct in the performance of the service is controlled or is subject to the right to control by the master. An independent contractor is a person who contracts with another to do something for him, but who is not controlled by the other, nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking.'' The same rule was announced in Meridian Taxi Cab Company, Inc. v. Ward, 184 Miss. 499, 186 So. 636, and in the very late cases of Carr v. Crabtree, et al., 212 Miss. 656, 55 So. 2d 408, and in Kughn v. Rex Drilling Company, et al., 217

Miss. 434, 64 So. 2d 582. In Hutchinson-Moore Lumber Company v. Pittman, 154 Miss. 1, 122 So. 191, this Court, answering the question, "Whose servant is this?", set forth these factors to be considered: "(1) the right to select the servant; (2) the right to discharge the servant; (3) the right to control the servant; and (4) that he is not master who is interested in the ultimate result of the work alone as a whole, but not in details of the performance." These elements were restated in Regan, et al. v. Foxworth Veneer Company, 178 Miss. 654, 174 So. 48. Other elements to be considered are set out in Kughn v. Rex Drilling Co., supra. It would seem clear that when these rules are applied to the ultimate facts of this case Thornton was an independent contractor and Johnson was his servant and not the servant of appellee. Other Mississippi cases so holding are Kisner v. Jackson, 159 Miss. 424, 132 So. 90; McDonald v. Hall-Neely Lumber Company, 165 Miss. 143, 147 So. 315; Cook v. Wright, 177 Miss. 644, 171 So. 686.

But appellants say that the stated circumstances are altered and modified, both in point of actual fact and legal effect, by the specific contentions of appellants' as now detailed and discussed.

When Mr. C. M. Thornton was on the stand he was presented a written statement and asked if he had signed it. After examination, he said it bore his signature. The statement is as follows: "I have been working for the Gooch Lumber Company for a period of 2 years and they instruct me where to go to cut logs, what trees to cut and how to cut them. They can move me from one woods area to another. The woods boss gives me specific instructions as to what trees I should cut and what I shouldn't cut. That my compensation for cutting the trees for Gooch Lumber Company is that they pay me a stipulated sum per thousand for logs which I cut for them, on their land, and transport to their mill. I am under complete supervision and control as to my activi-

ties and consider myself an employee of Gooch Lumber
Company. They also have authority to instruct my driver
upon arriving at the mill as to where to dump the logs
and any other orders incidental to the unloading. They
also cull any of the logs which they think are not suitable
for processing and I weekly draw my check at the Gooch
Lumber Company. I own the truck which Rufus Johnson
was driving outright. I do not owe Gooch Lumber Com-
pany on the truck. I employ approximately 5 Negroes
to aid and assist me in hauling and preparing the logs
to be hauled to the mill. *Ruben* Johnson said my trailer
had white paint on the tire and on the framework of the
trailer on the lefthand side indicating that it come into
contact with something painted white. I didn't see it my-
self. Rufus Johnson has been working for me for 5
years.'' Mr. Thornton then said a statement was pre-
sented to him a few days before the trial and he was asked
to sign it; that he did not have his glasses and could not
read the statement. It was not read to him. He then
said he had previously given a statement to Mr. Ney
Williams, his attorney, and if this was the same state-
ment it was correct. He was assured it was the same
statement and on that assumption he signed it. The state-
ment was then read to him while on the stand as a wit-
ness and he said he had not made any such statement;
that this was not the statement he had given his attor-
ney, who had died before the trial. In these words he
explained what he had said to his attorney:

''What I told Mr. Ney Williams, that they could give
orders to cut from fourteen inches up. Mr. Pendarvis
goes to work, and when we get through that piece of tim-
ber he comes back, and if we miss timber up to sixteen
inches, he would tell us. I wasn't telling a story about it;
I tried to tell like I done. That is the way they done it.
Mr. Pendarvis come out there once a week, sometimes
two. Sometimes I didn't see him for two weeks. He

didn't have a thing to do with my labor or my equipment; he didn't have any business at all."

Appellants say this makes an issues for the jury as to whether Johnson, the driver of the trailer-truck, was the servant of Thornton or of appellee. We do not think so for these reasons:

1. Thornton denied he ever made such a statement. He set out, as shown above, what he said to his attorney. No one denied what Thornton said about this statement. The person presenting it to Thornton did not testify. Thornton's version of the contents of the statement he did make to his attorney and the assumption on which he signed the proffered statement and his sworn testimony he made no such statement stand undenied. Thornton's credibility as a witness is not attacked. Thornton, as to his relation with appellee, had testified to the facts, as above set out, showing, without dispute, he was an independent contractor.

2. No part of the proffered statement, if true, would change the relation to that of master and servant except perhaps the part reading "I am under complete supervision and control as to my activities and consider myself an employee of Gooch Lumber Company" (We assume it was intended to name appellee instead of "Gooch Lumber Company"). The quoted statement is a conclusion, and the other assertions of fact therein contradict the conclusion. This statement, under the circumstances, is not affirmative evidence to establish the assertions of fact contained therein, except as the asserted facts are supported by the testimony of Mr. Thornton, and he denied he made any such statement as that quoted, and his testimony is uncontradicted.

It is shown that once or twice a week a representative of appellee went to the woods where the timber was being cut to see if the workmen were cutting only such timber, in sizes and kinds, as was conveyed by the deed, and whether undue damage was being done the unconveyed

timber and whether the laborers were getting over the line and cutting another person's timber, also to see whether the timber was being cut the required lengths and sizes. Appellant had a right to do that. This did not make Johnson its servant. Similar, and, in some of them, much more extensive checking-up, directory activities, were engaged in by defendants in the following cases without bringing about the relationship of master and servant: Hutchinson Lumber Company v. Pittman; McDonald v. Hall-Neely Lumber Company; Cook v. Wright; Regan v. Foxworth Veneer Company; Carr v. Crabtree, supra. Appellee had the right to make sure the provisions in the deed were not being violated and defendant made liable to adjoining owners or the grantor in the deed. Appellee was interested in the ultimate result but not in the details as to the manner of cutting and hauling of the logs. In this connection, it is shown that the Brasfield tract was low land as compared to the Birdsong land, and that appellee directed, or suggested to, Thornton that, during wet spells, he cut from the Birdsong tract, which he did. We are unable to see that this vested in appellee control, or the right of control, over the methods, means and manner of getting out and transporting the logs.

Appellant say there is some confusion in the record as to just who represented appellee in the making of the contract with Thornton. That matters not. There is no uncertainty as to the terms and provision of the contract whoever made it. In fact, the testimony of plaintiffs established the contract. There is no dispute as to what it was.

Appellants say the duration of the contract was not definitely fixed when it was made and that this creates the relation of master and servant. The testimony is uncertain as to whether Thornton contracted to cut and remove all of the timber on the Brasfield and Birdsong tracts. Thornton himself got seriously injured and his

son looked after the cutting and hauling of the logs, and that apparently was the reason Thornton did not cut and remove all of the timber conveyed to appellee on the two tracts. However, whatever may be the exact facts on this point, lack of a time limit is just one factor to be considered, along with many others, in determining the relation of the parties. That was the fact in Carr v. Crabtree, supra, which, by the way, was a workmen's compensation case, where the law is construed favorably to claimant.

Appellant also urges that appellee is liable because Thornton, according to their contention, was not a man of large financial means. As to the fact, the record does not disclose the financial worth either of Thornton or of the Vicksburg Hardwood Company, or whether either carried liability insurance. It is shown, however, that Thornton was a man of extensive experience in the work of cutting timber and hauling logs, and that his equipment and machinery were of suitable type and kind for the work, and that he successfully financed his operations. In fact, previously Thornton had owned and operated a sawmill and purchased logs himself. But conceding, for sake of the discussion, he was not a man of large means, the point is not well taken. This is not an attempt of a master to delegate nondelegable duties. If appellants' contention should prevail, only persons of large financial means could make a contract in Mississippi to cut and haul timber. We do not think that is the law.

A representative of appellee testified that when the present contract was initiated with Thornton he, Thornton, came to appellee's place of business and said "I want a job." Appellants seize upon that and say Thornton meant he wanted to become the servant of appellee. The argument is a play upon words, for as a part of the same answer the witness said "We will give you that job for twenty-three dollars per thousand at the mill," showing that by the word "job" they had in mind the making of

the contract between appellee and Thornton. And, as above stated, there is no dispute as to what the contract was.

Appellants make some other contentions. We have considered them all and think them not well taken. This record, in our opinion, establishes, without substantial dispute, that Thornton was an independent contractor and Johnson was his servant and not the servant of appellee. The trial court was correct in so holding.

Affirmed.

All Justices concur except *Lotterhos, J.,* who took no part.