MISS. EMPLOYMENT SECURITY COMM. *v.* PLUMBING
WHOLESALE CO.

Jan. 25, 1954

No. 39035          50 Adv. S. 51          69 So. 2d 814

*Harry M. Bryan, Robert Prisock,* Jackson, for appellant.

*Satterfield, Ewing, Williams & Shell,* Jackson, for appellee.

KYLE, J.

This case is before us on appeal by the Mississippi Employment Security Commission from a judgment of the Circuit Court of the First Judicial District of Hinds County reversing an order of the Commission disallowing an application for a refund of state unemployment taxes paid by the appellee, Plumbing Wholesale Company, to the Commission.

The tax levied by the Commission was levied under authority of Chapter 295, Laws of Mississippi, 1940,

known as ''The Mississippi Employment Security Law,'' and amendments thereto, including Chapter 412, Laws of Mississippi, 1948, Sections 7368-7446, Code of 1942.

Section 19(h) (1) of said law (Section 7440(h) (1), Code of 1942), defines the word ''employer'' as follows:

''(h) 'Employer' means:

(1) Any employing unit which for some portion of a day, but not necessarily simultaneously, in each of twenty different weeks, whether or not such weeks are or were successive, within either the current or the preceding calendar year, has or had in employment, eight or more individuals (irrespective of whether the same individuals are or were employed in each such day. . . .''

Section 19 (i) (1) of said law (Section 7440 (i) (1), Code of 1942), defines the word ''employment'' as follows:

''(i) (1) 'Employment' means any service performed prior to the effective date of this act which was employment as defined in this section prior to such date and subject to the other provisions of this subsection, service performed after the effective date of this act, including service in interstate commerce, performed for wages, or under any contract of hire, written or oral, express or implied. . . .''

Section 19(i) (5) of said law (Section 7440(i) (5), Code of 1942), provides as follows:

''(5) Services performed by an individual for wages shall be deemed to be employment subject to this act unless and until it is shown to the satisfaction of the commission that such individual has been and will continue to be free from control and direction over the performance of such services both under his contract of service and in fact; and the relationship of employer and employee shall be determined in accordance with the principles of the common law governing the relation of master and servant.''

Section 7 of the law (Sections 7390, 7391 and 7392, Code of 1942), provides for the payment of the contributions by covered employers according to the schedule and formula therein set forth.

The record shows that the Commission had a field representative make a check for the purpose of ascertaining the number of employees the Plumbing Wholesale Company had during the year 1951, and it was found that the company had seven regular employees each week, including all officers. It was also found that the company had also hired other persons to unload pipes and other plumbing materials, and this extra labor was paid out of the petty cash fund and not carried on the regular payroll. Such labor had been employed on twenty-two different occasions, each occasion in a different week, for unloading cars of plumbing materials during the year 1951. The company was accordingly registered as liable for contributions as a "covered employer" on wages paid its employees, under the provisions of the Employment Security Law. The taxes were computed and paid; and the company then filed its application for a refund, as provided for in the law, contending that the laborers hired to unload pipes and other materials during the calendar year were independent contractors.

The question presented for our decision is, whether the lower court erred in reversing the order of the Commission disallowing the appellee's claim for a refund of the amount of the taxes paid. And the answer to that question depends upon the answer to the question, whether or not the appellee had as many as eight or more individuals "in employment" for some part of a day in twenty different weeks in the calendar year 1951, and was therefore liable for contributions as a "covered employer" on the wages paid to them. If the laborers who were employed to unload the cars are to be counted, the appellee had as many as eight or more such individuals "in employment," and was liable for the contributions. If the

laborers who were employed to unload the cars are not to be counted, the number of individuals "in employment" was less than eight, and the appellee was not liable for the contributions.

The proof taken before the Commission showed that the company received about every two weeks one or more carload shipments of pipe and other plumbing materials, which were delivered by the carrier f.o.b. the cars at the company's yard. The company having no regular employees available to unload the cars had adopted a custom of hiring extra labor to unload the cars; and Veal Stack, a colored laborer, had performed this service for the company for several years prior to the year 1951 and continued to perform this service for the company until he became disabled sometime during the year 1951, when McKinley Teague, another colored laborer, took over the job. Veal Stack died during the month of March, 1952. The hearing before the Commission took place on August 8, 1952. McKinley Teague and R. E. Warwick, treasurer of the Plumbing Wholesale Company, testified before the Commission concerning the nature of the employment of the extra help mentioned above; and their testimony was made a part of the record and is now before us on this appeal.

Teague testified that his main occupation was mowing yards and working in flower beds for people who had need of his services, "just doing yard work." He had unloaded cars from time to time over a period of years, and had unloaded cars for the Plumbing Wholesale Company since sometime during the year 1951, when Veal Stack became disabled. Whenever a carload of plumbing materials was spotted at the company yard, the company would notify him and he would go to the warehouse and unload it. He usually engaged a helper to assist him. The time required to unload a car was usually about two hours; but, if he had to stack the materials, it took around eight hours. He was paid $20 for unloading each car, and signed a slip when the company paid him for the job.

He paid his own helper out of the $20, if he had used a helper in unloading the car. When he started to work he was told where to stack the pipe and other plumbing materials. He was told that he must have separate stacks for the different kinds of materials. He did not have to be told that again. No one stayed there and supervised him during the unloading. He had no regular hours of employment while he was doing the work. He never worked at a job of that kind by the week or the month. His regular work was yard work. On cross-examination Teague stated that he furnished no special tools when working for the plumbing company. He did not hold himself out to the public as a man engaged in unloading cars only. He unloaded the cars, put the plumbing materials in the warehouse anywhere he could find places for them, and stacked the pipes on the company's yard, which was enclosed by a fence. He made separate stacks for different sizes of pipes. So far as he knew, he did all of the unloading for the company.

R. E. Warwick testified that Stack unloaded the cars for the company until sometime during the year 1951, when Teague took over the job. He stated that Stack and Teague employed their own helpers, but when he paid them he usually divided the money—"changed the money for the contractor." He said he did not supervise the "unloaders," did not have time to do that. But he admitted that he had given directions as to the places where the supplies were to be put. "We have directed them not to put water heaters where they put them last time." If he found any part of the work done wrong, he would tell the "unloader" how to do it. If the occasion arose for a change in the work during the unloading, he would not hesitate to tell the workman what change he wanted. "It is like this. On occasion we have found that it would be more efficient for us in loading pipe on trucks to have a certain size of pipe here . . . and we find that half-inch galvanized pipe would be distributed more easily to the customer if it were over there. If a stack of pipe

gets down, we might tell this man, 'Don't put your half-inch there, put it here.' " "Q. That is right on the site, and at the time he is doing the work? A. Yes. It would have to be before he started. You don't have him tear down a tier." Warwick stated that the work that Stack and Teague were doing was common labor. "We were buying the product of their back and not of their mind." He stated that it was not a skilled job, but it was a job that needed experience.

What then was the relationship between Stack and the plumbing company, and between Teague and the plumbing company? Were Stack and Teague employees or servants of the company, or were they independent contractors? "Servant" and "independent contractor" have been defined in Restatement of the Law, Agency, Sec. 2, pars. 2 and 3, p. 11, as follows:

"(2) A servant is a person employed by a master to perform service in his affairs whose physical conduct in the performance of the service is controlled or is subject to the right to control by the master.

"(3) An independent contractor is a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking."

In discussing the difference between an independent contractor relationship and the relationship of master and servant, the textwriter in 35 Am. Jur., p. 448, Master and Servant, par. 5, says:

"The determination of whether a relationship is strictly that of master and servant or is an independent contractor relationship, or whether a person is an independent contractor or merely an employee or a servant, depends upon the power of control which the employer is entitled to exercise over the person in question. The relation is that of independent contractor where it appears that a person employed to do work is not, in the execution and performance of such work, subject to the control

of the employer, but is free to execute the work without being subject to the orders of the employer with respect to the details thereof. If, however, one engages another to perform certain work, retaining control of the conduct of the person thus engaged with respect to the work to be done or the order, method, and plan of the work, the relation is that of master and servant, and not of employer and independent contractor.''

The matters of fact to be taken into consideration in determining whether one acting for another is a servant or an independent contractor are set forth in Section 220, Rest. Agency, and in numerous decisions of this Court. See especially, Kisner v. Jackson, 159 Miss. 424, 132 So. 90; and Texas Co. v. Mills, 171 Miss. 231, 156 So. 866.

Among these matters of fact are:

''(a) the extent of control which, by the agreement, the master may exercise over the details of the work;

''(b) whether or not the one employed is engaged in a distinct occupation or business:  . . .

''(d) the skill required in the particular occupation.

''(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work.

''(f) the length of time for which the person is employed.

''(g) the method of payment, whether by the time or by the job.

''(h) whether or not the work is a part of the regular business of the employer.'' Rest. Agency, Sec. 220, p. 483.

In the case that we have here, although Teague and Warwick both testified that Teague was not under the direct supervision of the company's superintendent or treasurer, while he was engaged in unloading the cars of pipes and other plumbing materials, it is clear from the testimony of Warwick, the treasurer, that Teague was subject to the control of the plumbing company at all times while he was engaged in unloading the cars and stacking the plumbing materials in the warehouse and on

the yard. Ordinarily, only slight supervision was necessary. Teague had learned from experience where to put the different classes of plumbing materials in the warehouse and how to stack the pipes on the yard. But the right of control existed, and according to Warwick's own testimony that right was exercised when the company saw fit to exercise the right.

Neither Stack nor Teague was a skilled workman, and neither of them was engaged in a distinct occupation or business. Warwick admitted that the work required of them while they were engaged in unloading cars was common labor. Warwick said: "We were buying the products of their backs and not of their minds." It was not a job that required skill; but it was a job that needed experience. Teague stated that he furnished no special tools for the work while he was working for the company; and the work was done on the employer's premises. The work was piece work, and it was only part time work.

Larson says that payment of a fixed sum for a completed job is characteristic of independent contractorship, but not conclusive; and payment on a piece work basis is consistent with either status. Larson's Workmen's Compensation Law, par. 44.33. But Larson also says that, "The modern tendency is to find employment when the work being done is an integral part of the regular business of the employer, and when the worker, relative to the employer, does not furnish an independent business or professional service." Larson's Workmen's Compensation Law, par. 45.00.

The unloading of the cars of pipes and other plumbing materials was a part of the appellee's regular business; and Teague had been regularly employed to do that work whenever a car had to be unloaded. It was work that required hard labor. But humble as Teague's employment was, Teague was a necessary cog in the appellee's plumbing business. Teague's job was not a job that had to be done only at unpredictable intervals, as was the

case in Kughn v. Rex Drilling Company, 217 Miss. 434, 64 So. 2d 582. Teague's job had to be done at regular intervals. The fact that Teague's employment was recurring employment and that Teague worked at the job for some portion of a day in each of twenty different weeks during the year constitutes the basis of the appellant's claim that the appellee was not entitled to a refund of the tax.

We think that under the rule laid down in all of the above mentioned authorities the relation between the appellee and Teague was that of master and servant, and not that of employer and independent contractor.

The appellee contends in its brief that the cases of Carr v. Crabtree, 212 Miss. 656, 55 So. 2d 408, and Cobb, et al. v. Vicksburg Hardwood Company, 218 Miss. 829, 68 So. 2d 98, are controlling here, and that the rule applied in those cases should be applied here. But those cases are wholly unlike this case. In the case of Carr v. Crabtree the proof showed that Carr Brothers were logging contractors who were engaged in the business of cutting and hauling timber, and held themselves out to the public as such. They owned their own timber cutting and hauling equipment, and employed a crew of workmen; and in the case of Cobb, et al. v. Vicksburg Hardwood Company, the proof was about the same as in Carr v. Crabtree.

As this Court said in its opinion in the case of First National Bank of Oxford v. Mississippi Unemployment Compensation Commission, 199 Miss. 97, 23 So. 2d 534, "the field within which the doctrine of independent contractor may operate cannot extend so as to embrace every form of employment." Teague, in the case that we have here, was not a person who was engaged in a distinct occupation or calling. He was simply an ordinary laborer, chosen by the appellee to unload and stack in the warehouse and on the yard car loads of plumbing supplies and materials which the appellee purchased from

time to time for use or resale in its plumbing business. The only reasonable inference to be drawn from Teague's testimony and Warwick's testimony is that the appellee intended to retain the right to give directions in regard to the details of the work; and the relation which Teague bore to the appellee during the progress of the work was in law that of a servant.

In the case of Benjamin v. Davidson-Gulfport Fertilizer Company, 169 Miss. 162, 152 So. 839, the Court held that one employed to unload a car of phosphate rock dust with tools, appliances and equipment furnished by the employer was a "servant," and not an "independent contractor," though engaged in piece work.

Larson says that the test for determining whether the status is that of an independent contractor or an employee are the "control" test, and the "relative nature of the work" test. Larson's Workmen's Compensation Law, par. 43.53. See also Anno. 38 A. L. R., p. 939. We think that under either of these tests Teague was an employee and not an independent contractor.

In view of what has been said above, the judgment of the lower court is reversed and a judgment will be entered here in favor of the appellant, affirming the order of the Commission denying the appellee's application for a refund of the contributions paid.

Reversed and judgment rendered for the appellant.

*Roberds, P. J.,* and *Lee, Holmes* and *Ethridge, JJ.,* concur.