HERCULES POWDER COMPANY *v.* WESTMORELAND

No. 43065 May 25, 1964 164 So. 2d 471

*Watkins & Eager,* Jackson, for appellant.

*George B. Grubbs, George C. Williamson, Tom B. Alexander,* Mendenhall, for appellee.

BRADY, TOM P., J.

This suit arose out of an automobile accident which occurred on February 15, 1962, on a public gravel road in Simpson County, known as the Mendenhall-Bogan

Ridge Road. A negro by the name of John L. Hays was driving his truck, and riding with him in the truck were two other Negroes. An automobile driven by the appellee, Mrs. Tom (Juanita) Westmoreland, ran off the road and struck two pine trees, causing the injuries complained of. No collision between the two vehicles took place.

Suit was instituted in the Circuit Court of Simpson County on the 20th day of June, 1962, against Hercules Powder Company, a corporation, and John L. Hays, defendants. A judgment and verdict in the amount of $9,100 was obtained against said defendants. The defendant John L. Hays paid appellee the sum of $5,000 in return for a covenant not to sue, and this codefendant below, is not a party to this appeal from the judgment of the circuit court.

In the circuit court the liability of the appellant was predicated upon the alleged master and servant, or employer and employee, relationship between John L. Hays and the appellant. The appellee attempted to show that Hays was acting within the scope of his employment as a servant of appellant, Hercules Powder Company.

At the conclusion of the appellee's testimony, the appellant moved to exclude the testimony of the appellee and asked for a peremptory instruction, which was denied, and at the conclusion of the appellant's testimony, this same motion was renewed, which was likewise overruled. It is the principal position of the appellant that the relationship which existed between the codefendant Hays and the appellant herein at the time of the accident was that of a purchaser and seller, or an independent contractor, and, for this reason, the appellant's requested peremptory instruction should have been granted by the trial court. It is further contended by the appellant that, even if the relationship of independent contractor did not exist and that appellant was actually the employer and master of the

codefendant, Hays, nevertheless, at the time the alleged accident occurred, the appellant was not engaged within the scope of his employment or in the furtherance of his master's business and, therefore, the appellant is not liable for the torts of the servant Hays.

As is to be expected in cases of this kind, the facts are very prolix. We will, however, endeavor to restrict the facts to essentials only, as much as possible.

On February 15, 1962, at approximately 7:15 A. M., the appellee, Mrs. Tom (Juanita) Westmoreland, was driving a 1955 Dodge automobile in a northerly direction along the Mendenhall-Bogan Ridge Road. At approximately the same time, the codefendant, John L. Hays, was driving a 1961 Chevrolet two ton truck in a southerly direction along said road. The road curves as it goes over a hill. As the truck, which was operated by Hays, topped the hill and was proceeding around the curve, the 1955 Dodge automobile, being operated by the appellee in a northerly direction, was seen approaching. This hill and curve is located approximately three miles south of Mendenhall, Mississippi. There is a sharp conflict in the testimony from this point onward, the appellee maintaining that the truck being driven by Hays was not on its side of the road but was partially across the center portion of said road and, in order to avoid a direct collision with the truck, the appellee was forced to turn her vehicle to the right and into a slight depression, causing her to leave the road, where she struck a pine tree near the road, resulting in severe damage to her automobile and personal injuries to herself. No claim for any sum is made on account of the damages done to the automobile, which the record disclosed belonged to appellee's husband. The appellee testified she was traveling around twenty to twenty-five miles per hour, or at some reasonable speed comparable to this, and that when she saw the truck it was some fifty feet away, and then she realized that

she was not going to be able to pass the truck. Hays and his two Negro employees who were in the truck approximated the distance the appellee was from them as being as far as two hundred to three hundred feet away, and estimated the speed which the appellee was driving as between fifty and sixty miles per hour; that the appellee's vehicle left the road and entered a slight ditch before it had reached the spot where the truck belonging to the appellant was; that she lost control of the automobile and that it crisscrossed the road, missing the truck, and striking a pine tree or small sapling, then crossing back over the road and ultimately striking two other pine trees off the road, one of which was of some size, causing the aforesaid injuries.

Elmo Funchess and Willie Lee White were employees of John L. Hays and were riding with him in the truck at the time. The testimony of Hays and the two witnesses was that he was to his right side of the road, close to the edge of the road, varying in distance from three feet to six or eight inches therefrom, but not over the median line of the gravel road. The record clearly indicates that Hays and his two employees believed that it was the speed at which the appellee's car was traveling and her loss of control of the car which proximately caused the wreck. There is no doubt that the car and truck never collided. The width of the road varies in distance from fourteen feet to twenty and a half feet. The patrolman estimated the distance over which this accident took place was one hundred feet in length and that the road was between eighteen and a half and twenty and a half feet wide at this point. The width of the truck is undisputed as being between seven and a half to eight feet in width.

The appellee claimed damages in the sum of $60,000 for the personal injuries which she alleges to have sustained. The record discloses that from March 10, 1962 (the accident occurring on February 15th) through

August 4, 1962, she had a drug bill of $34.75, most of which was for prescriptions which she alleged it was necessary for her to take on account of her injuries; that she was admitted to the Simpson County Hospital on February 15, 1962, at approximately 8:45 A. M., and that she was discharged from the hospital at 6:35 P. M. on February 17, 1962.

There are several reasons why the verdict for the appellee cannot stand in this case and for which this case will have to be reversed and remanded for trial in the court below, unless the appellant here was entitled to a peremptory instruction. It is to this fundamental question that we address ourselves, and if this question is resolved in favor of the appellant and judgment should be entered here for the appellant, then it is unnecessary to consider the other questions which relate solely to the reversal of the case and a remanding of the same for a new trial. For this same reason, it is unnecessary to consider any other errors assigned.

The fundamental question is whether or not, under the facts as disclosed in this record, John L. Hays was an independent contractor or whether or not John L. Hays was a servant and employee of the appellant. In order to determine this question, certain basic facts must be considered.

The record discloses that John L. Hays was the owner of the truck in question; that he was paying for this truck as he had paid for other trucks; that John L. Hays had in his employment two Negroes, named Elmo Funchess and Willie Lee White. The record further shows that all three of these persons were riding in the truck which belonged to John L. Hays and which was being driven by Hays. The record discloses they were en route to a Mr. Jim Peacock's place, where they proposed to dig, load and to haul stumps. The record discloses that on February 14th Hays had executed a wood purchase contract with Mr. Peacock for

pine stumps located on his farm; that the contract form had been furnished by appellant. The record further discloses that the appellant had a substation or shipping station located at Weathersby, Mississippi, where there were located scales, a railroad siding and a dragline crane apparatus used for the unloading of stumps from the trucks of the sellers and onto railroad cars, and that at this substation Hercules Powder Company had four employees, who weighed and inspected and accepted or rejected the stumps. The record shows that the substation was operated eight hours per day.

The record further shows that John L. Hays was paid so much per ton for the stumps, and that he was allowed a mileage for hauling the stumps, from the place where they were purchased and located, to the substation at Weathersby, Mississippi. He was allowed a monthly quota of pine stumps generally consisting of fifty tons. The record further discloses that Mr. Peacock's place was located seven miles from this substation. The record shows that the appellant paid Hays a set amount per ton for the stumps which were delivered and weighed and that there was a mileage allowance, the mileage being from naught to twenty miles, and from twenty miles to thirty miles. The stumps had to be under a certain size and could have only a minimum amount of dirt or trash thereon. They could not be over eight feet long and they could not be over thirty-two inches at the widest part. They must be free from earth and they must not be rotten. The record discloses that Hays was not paid anything or given any mileage allowance, except for the mileage which was actually utilized in transporting the stumps from the location where the stumps were being dug and loaded, to the substation.

The record is undisputed that at the time of the accident Hays and his two employees were riding from their homes to Mr. Jim Peacock's place to begin the day's

work. On February 14th the bill of sale or contract had been secured from Mr. Peacock for the merchantable pine stumps which were located on his land. The 1961 Chevrolet truck which Hays was operating had been purchased by him from T. J. Blackwell of the Chevrolet Company of Mendenhall. The bulldozer which Hays was using in order to push the stumps out of the ground had been purchased by Hays from the Southern Equipment Company in Jackson, Mississippi. Hays had paid for the truck and the bulldozer by having the appellant withhold from the monies which were due him from the sale of stumps a stated amount per ton, which was agreed to by the vendors of this equipment, and the appellant. With the approval of the vendors and Hays, the appellant had forwarded these amounts to Blackwell and to the Southern Equipment Company. The record further shows that the two employees, Willie Lee White and Elmo Funchess, were paid by Hays, so much per load of stumps, or by the number of tons of stumps which they were able to load and which were able to be transported and sold to the substation at Weathersby.

As we have often indicated, it is exceedingly difficult to define the term "independent contractor", but since 1885, as shown in the case of New Orleans, B.R.V. and M.R.R. Co. v. Norwood, 62 Miss. 565, 52 Am. Rep. 191, this Court has set forth certain criteria or tests whereby the relationship of independent contractor as opposed to master-servant relationship has been determined to exist. There is no separate or single determiner which can resolve this question. All relevant factors must be considered simultaneously in order to determine the nature of the relationship. The application of the criteria is at times difficult and the determination varies as the facts of each case differ. Kisner v. Jackson, 159 Miss. 424, 132 So. 90.

In order to briefly dispatch the question in issue here, we review the controlling facts as disclosed by the rec-

ord. (1) On the morning of February 15, 1962 the appellant could not have ordered Hays to work, and did not know if Hays was working and, if working, where he was working or what work he was doing. Appellant did not know if Hays was digging stumps, or hauling logs or pulpwood. (2) Appellant did not know what road Hays would travel in order to go to work, in this instance on Mr. Peacock's land. (3) Hays purchased, owned and paid taxes on his own equipment, the bulldozer, truck and tools. (4) Hays determined how many workers he needed and then hired, directed, paid and could fire his employees without appellant's knowledge or consent. (5) Appellant had no control over Hays' servants. (6) Appellant could not direct or control Hays as to where he would work, when he would work or how he would perform his work. (7) Appellant was only concerned with the end result, i. e., purchasing the pine stumps, free from dirt, not decayed, and not larger than a certain size when delivered to the substation at Weathersby. (8) Appellant made no deductions from Hays' sales of stumps for social security or income taxes in behalf of Hays or his employees. (9) Hays alone fixed his days and hours of work. (10) Hays purchased the stumps himself from Mr. Peacock and paid for them out of deductions made by appellant from his sales of the stumps to the appellant. (11) Appellant paid Hays the unit price of $10 per ton plus mileage from the place where the stumps were removed from the ground. (12) If Hays did not haul stumps he received no pay. (13) Hays and his workers alone removed the stumps, loaded them and hauled them to the appellant's substation at Weathersby. (14) The appellant exercised no control over the details or the method of Hays' work. (15) Appellant was completely disassociated from active interest in the performance of Hays' work or the supervision of the results thereof.

These facts, plainly evident, clearly establish conclusively that Hays was and is an independent contractor, and was not under the domination or control of the appellant, Hercules Powder Company. Because of this fact it follows that the principles of common law negligence remove Hays from the relationship of master and servant and therefore the doctrine of respondeat superior has no application in this cause.

Though there are numerous cases which substantiate this rule, the following are particularly in point and controlling: Kisner v. Jackson, supra; Crescent Baking Co. v. Denton, 147 Miss. 639, 112 So. 21; Hutchinson-Moore Lbr. Co. v. Pittman, 154 Miss. 1, 122 So. 191; McDonald v. Hall-Neely Lbr. Co., 165 Miss. 143, 147 So. 315; Crosby Lbr. & Mfg. Co. v. Durham, 181 Miss. 559, 179 So. 285-287, 854; Texas Co. v. Mills, 171 Miss. 231, 156 So. 866; Regan v. Foxworth Veneer Co., 178 Miss. 654, 174 So. 48; Cook v. Wright, 177 Miss. 644, 171 So. 686; Kughn v. Rex Drilling Co., 217 Miss. 434, 64 So. 2d 582; Carr v. Crabtree, 212 Miss. 656, 55 So. 2d 408; Cobb v. Vicksburg Hardwood Co., 218 Miss. 829, 68 So. 2d 98; Simmons v. Cathey-Williford & Jones Co., Inc., 220 Miss. 389, 70 So. 2d 847.

Appellee contends that since the appellant allowed Hays a quota of only fifty tons a month, due to its mill capacity, and because when Hays removed stumps on land where the appellant had purchased the stumps he was required to stay within the boundaries marked by appellant's field man and to "clean up" the land after removing the stumps, and since appellant furnished the purchase forms which Hays used in buying stumps and deducted from Hays' sales of stumps amounts authorized by Hays and by the vendors of equipment sold to Hays, or insisted that Hays take out liability insurance on his truck, that these acts of appellant exerted such control over Hays and his opera-

tions as to constitute Hays a servant of appellant as his master.

 █ We feel that there is no merit in this assertion for the fifteen reasons already enumerated, and because of the controlling authorities cited. These occasional, limited, and conditional acts on the part of the appellant, when therein engaged, do not alter the basic, independent, contractual, relationship existing between Hays and the appellant. Crosby Lbr. & Mfg. Co. v. Durham, supra; Cobb v. Vicksburg Hardwood Co., supra; Cook v. Wright, supra; Hutchinson-Moore Lbr. Co. v. Pittman, supra; Regan v. Foxworth Veneer Co., supra; and other cases, supra.

It is unnecessary to determine whether, at the time of the accident, Hays was acting within the scope of his employment, or to consider the other grave errors assigned, for the reason that appellant's motion for a peremptory instruction should have been granted by the trial court.

For the foregoing reasons, the judgment for the appellee is reversed and judgment entered here for the appellant.

Reversed and judgment for appellant.

*Lee, C. J., and Gillespie, McElroy and Rodgers, JJ.,* concur.