962 So.2d 94 (2007)
Mary E. HENRY, Appellant
v.
MISSISSIPPI DEPARTMENT OF EMPLOYMENT SECURITY, Appellee.
No. 2006-CC-01129-COA.
Court of Appeals of Mississippi.
July 31, 2007.
*96 Mary E. Henry, Appellant, pro se.
Albert B. White, Madison, attorney for appellee.
Before MYERS, P.J., ISHEE and CARLTON, JJ.
CARLTON, J., for the Court.
¶ 1. The George County Circuit Court affirmed the decision of the Mississippi Department of Employment Security's Board of Review to deny Mary Henry the unemployment benefits she requested. Henry presents for our review evidentiary matters in the agency's appeals process and alleges judicial impropriety. Finding that the decision of the Board is supported by substantial evidence, we affirm the decision of the circuit court.

FACTS
¶ 2. In October 2002, Henry began her employment at the George County Regional Correctional Facility. On February 2, 2005, Henry's employment as an assistant food service manager was terminated. Henry then filed for benefits. A claims *97 examiner interviewed Henry and Terry Rogers, an administrative assistant at the correctional facility. As a result of this investigation, the claims examiner concluded that Henry was disqualified from receiving benefits due to her employment terminating because of misconduct. Henry appealed the decision of the examiner.
¶ 3. On March 14, 2005, an appeals referee held a telephonic hearing. Henry notified the Department in writing that she would not be participating in the hearing because she was accompanying her husband to his medical appointment. Henry notified the Department that Mr. Richard Henry would represent her in the hearing. Richard Henry was a former security officer at the correctional facility, and therefore was familiar with the operations, policies, and procedures there. Preston Goff, Jr., the warden of the correctional facility, represented the employer in the hearing. Henry's immediate supervisor, Darryl Thomen, was available to testify at first, but Warden Goff decided not to produce his testimony. The appeals referee concluded that Henry's employment was terminated because of misconduct.
¶ 4. On April 14, 2005, the Board adopted and affirmed the factual findings and the opinion of the referee. The findings of the Board include:
On January 25, 2005, the claimant asked permission to have a specific inmate in the kitchen to assist in cleanup. Permission was granted for the inmate to help in the kitchen after all the other inmates had left. The other inmates leave between 3:30 p.m. and 4:00 p.m. This particular inmate was brought to the kitchen between 3:30 p.m. and 4:00 p.m. on three separate days. On January 31, 2005, it was discovered the computer in the kitchen had several programs added to it. These programs were installed without authorization. All the programs were installed during times the claimant was on duty. Prior to this the claimant had been advised that no programs could be added to this computer. On February 2, 2005, the claimant was searched as she entered the facilities. This search revealed three paperback books and one bottle of flavoring. Prior to this the claimant had been advised that she could not bring anything in except cigarettes and then only if she smoked, daily medication that she might need, and a snack. Everything else is considered contraband. The claimant was discharged on February 2, 2005.
The referee's opinion, as adopted by the Board, stated the definition of "misconduct," citing Wheeler v. Arriola, 408 So.2d 1381 (Miss.1982). The opinion of the Board, as adopted from the referee concludes that:
the claimant was discharged for adding programs to the computer without authorization, bringing contraband to the facility, and allowing an individual in the kitchen at times when he was not supposed to be there. The claimant's actions do rise to the level of misconduct as that term is used in the law. Therefore, the decision of the claims examiner is in order.
¶ 5. Henry then appealed to the George County Circuit Court. Henry argued that the decision of the Board was not supported by substantial evidence. She also alleged unlawful activity on the part of certain officials at the correctional facility. The circuit court found that the decision of the Board was supported by substantial evidence and that the perjury allegations Henry made were beyond the circuit court's scope of review. Aggrieved, Henry appeals.
*98 ¶ 6. On appeal, Henry's arguments include: that the circuit court initiated ex parte off the record communication with the employer, without Henry's knowledge, in order to gather additional information; that the circuit court erred in not attending to Henry's complaint that the employer's representative, Warden Goff, committed perjury during the appeals hearing; that the referee erred in allowing the employer to withdraw a proposed witness; and that the referee erred in excluding vital documented evidence submitted by Henry. The appeal has been assigned to this Court.

DISCUSSION
1. Judicial Impropriety
¶ 7. The record is silent as to whether Henry filed a complaint with the Mississippi Commission on Judicial Performance outlining the arguments below. Henry argues that Circuit Court Judge Robert Krebs must have initiated ex parte communication with a representative of the employer. She reaches this conclusion because the circuit court's order states that the court "having considered the matter, and having been further fully advised in the premises, finds that Plaintiff's appeal is hereby denied." (emphasis added). She concludes that the circuit judge's alleged ex parte contact tainted the review of Henry's case, impugning the integrity of that court.
¶ 8. We read the statement of the trial court, that it had "been further fully advised in the premises," to indicate that the circuit judge fully read and processed through the pleadings of the parties in addition to the record of the proceedings which had previously taken place. Other than the statement of the court, Henry advances no evidence of an ex parte communication. Henry's argument does not present an issue for review.
¶ 9. Henry also argues that a "bizarre occurrence" took place after she appealed to the circuit court. Henry alleged in her appeal to the circuit court that Warden Goff committed perjury during the Department's hearing. Henry argues that some unknown party in the circuit clerk's office alerted Warden Goff to the allegation of perjury in Henry's complaint. To substantiate this claim, Henry directs our attention to a motion for a hearing made by Warden Goff and George County Sheriff Garry Welford in response to Henry's allegations. George County Prosecutor George Maples signed this motion as counsel for Warden Goff and Sheriff Welford. Henry further argues that any pursuit of justice will be obstructed due to a direct familial relationship between Warden Goff and Justice Court Judge M.L. Goff.
¶ 10. Court filings are public records unless such filings are excluded from the Public Records Act. See Miss.Code Ann. §§ 25-61-1 to -17 (Rev.2006). Henry's pleading to the circuit court was a public record. Henry's argument does not present an issue for review.
¶ 11. Henry further argues that any court should diligently address an allegation against a person that is accused of committing perjury. She argues that the appeal to the circuit court was the only chance to pursue the criminal prosecution of Warden Goff for his suspect testimony. Henry reasons that the circuit court had jurisdiction to address or prosecute the allegation of perjury pursuant to Mississippi Code Annotated section 9-7-81 (Rev. 2002).[1] Henry also argues that the court had jurisdiction to address the allegation *99 of perjury pursuant to Mississippi Code Annotated section 71-5-531 (Supp.2006), providing that the decision of the Board will be conclusive "in the absence of fraud. . . ." She concludes that the circuit court erred in concluding that the allegation of perjury would not be considered as it was beyond the scope of review of the matter presented.
¶ 12. In addition to the statutory provisions above, Henry also relies on Uniform Criminal Rule of Circuit Court Practice 1.01. The Uniform Criminal Rules of Circuit Court Practice have been replaced by the Uniform Rules of Circuit and County Court. The language Henry cites includes:
If it appears from the facts set forth separately in writing in or with the complaint and any supporting affidavits or supplemental sworn testimony, that there is probable cause to believe that an offense has been committed and that the defendant committed it, a warrant for the arrest of the defendant shall be issued to any person authorized by law to execute it.
URCCCP 1.01. The language of that provision, which is no longer in effect, simply reiterated the requirement that when a warrant for arrest was sought, a magistrate be informed of underlying facts and circumstances sufficient to support a finding of probable cause under the totality-of-the-circumstances standard. See Henry v. State, 486 So.2d 1209, 1218 (Miss.1986) (Robertson, J., dissenting).
¶ 13. Pursuant to Article 3, Section 27 of the Mississippi Constitution, a grand jury must return an indictment before a prosecution for a felony may be had. Williams v. State, 708 So.2d 1358, 1364(¶ 29) (Miss.1998). Absent an indictment, prosecution may commence where "proceeded against criminally by information," or "by leave of the court for misdemeanor in office or where a defendant represented by counsel by sworn statement waives indictment." Id. at (¶ 30) (quoting Miss. Const. art. 3, § 27). Nothing in the record indicates that Warden Goff was indicted, waived indictment, or was proceeded against criminally by information.
¶ 14. In the present case, Henry filed her appeal to the circuit court alleging that Warden Goff committed perjury in the Department's hearing. Her filing was not in the form of an affidavit swearing that a crime had been committed. This is sufficient to terminate our analysis of this issue. We need not discuss the requirements of bringing charges against a law enforcement officer, but note the statutory provisions governing such procedures. Miss.Code Ann. § 99-3-28 (Rev.2006). The circuit court properly concluded that the criminal allegations were beyond the scope of Henry's appeal.
2. Evidence of Henry's Misconduct
¶ 15. Henry argues that the Department's appeals referee erred in excluding from the record vital documents that Henry submitted into evidence. She argues that this action prevented officials at the Department, the circuit court, and this Court from reviewing this documentary evidence. Henry believes that the exclusion of these documents deprived her and her representative of credibility and reduced her representative to a hearsay witness. She also concludes that the exclusion of these documents prevented her from testifying in any capacity in the hearing. A letter Henry sent to the Department indicates that she was concerned about various documents not being included for review. In her brief before this Court, Henry lists the specific excluded documents as a letter she sent to Warden Goff and job descriptions of her position *100 and other positions at the correctional facility.
¶ 16. The record before this Court includes the letter Henry mailed to the Department, including her two page response to Warden Goff. The record also contains various job descriptions including: correctional officer, assistant food manager, lieutenant, and sergeant. Henry's argument does not present an issue for review. We now address the fulcrum of this appeal: whether the decision of the Board is supported by substantial evidence.
¶ 17. Henry argues that there was not substantial evidence presented to support the decision of the Board. She argues that the Department's appeals referee erred in allowing the employer to withdraw Henry's direct supervisor as a witness. Henry reasons that the allegations against her were not adequately supported by the Warden's testimony alone nor by the documents he submitted as evidence. Various other points of contention are raised as error, including that the referee should have asked Henry's representative if there was any objection to Henry's supervisor not testifying, that there was reliance on the Warden's alleged false statement about notifying Henry of certain policies, that there was an alleged misrepresentation concerning the level of interaction between Henry and the Warden, and that Henry was denied the right to confront her accusers by her direct supervisor not testifying.
¶ 18. The decision of the Board will not be disturbed unless it is "(1) unsupported by substantial evidence, (2) arbitrary or capricious, (3) beyond the scope of power granted to the agency, or (4) in violation of the employee's constitutional rights." McClinton v. Miss. Dep't of Emp. Sec., 949 So.2d 805, 807(¶ 3) (Miss.Ct.App. 2006) (quoting Johnson v. Miss. Emp. Sec. Comm'n, 761 So.2d 861, 863(6) (Miss. 2000)). The supreme court has further summarized the applicable standard of review, stating:
The standard of review for appealing a decision of the MESC is governed by Miss.Code Ann. Section 71-5-531 which provides: "in any judicial proceedings under this section, the findings of the board of review as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of said court shall be confined to questions of law." This Court has previously stated: where there is the required substantial evidence, this Court has no authority to reverse the circuit court's affirmance of the decision of the Board of Review. The board's findings of fact are conclusive if supported by substantial evidence and without fraud. Therefore, this Court must not reweigh the facts of the case or insert its judgment for that of the agency.
Broome v. Miss. Emp. Sec. Comm'n, 921 So.2d 334, 337(¶ 12) (Miss.2006) (internal citations and quotations omitted).
¶ 19. When an employee is dismissed for misconduct, the former employer has the burden of demonstrating the dismissed employee is not qualified to receive benefits by advancing "substantial, clear, and convincing evidence. . . ." Pannell v. Tombigbee River Valley Water Mgmt. Dist., 909 So.2d 1115, 1120(12) (Miss.2005). Misconduct is defined as:
conduct evincing such willful and wanton disregard of the employer's interest as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect from his employee. Also, carelessness and negligence of such degree, or recurrence thereof, as to manifest culpability, wrongful intent or evil design, and showing an intentional or substantial disregard *101 of the employer's interest or of the employee's duties and obligations to his employer, came within the term. Mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, or inadvertences and ordinary negligence in isolated incidents, and good faith errors in judgment or discretion were not considered "misconduct" within the meaning of the statute.
Broome, 921 So.2d at 337(¶ 14) (quoting Wheeler, 408 So.2d at 1383). Misconduct also includes "conduct that reasonable and fair minded external observers would consider a wanton disregard of the employer's legitimate interests." Broome, 921 at 337(¶ 14) (citation omitted).
¶ 20. Due to some of the evidence involved in the discussion below, we note this Court's recent approach in determining the viability of certain hearsay evidence in an administrative agency proceedings. In McClinton, we stated "that if hearsay, even if not corroborated in the traditional sense, is highly probative because it has strong indicia of reliability, it can at least in many situations be substantial evidence." McClinton, 949 So.2d at 814-15(¶ 29). Such hearsay may include properly admitted personal affidavits even where contradicted by the live testimony of a claimant, and where there is no corroborative live testimony. Id. Out of caution, as in McClinton, we examine the evidence here under the following two standards:
One is the traditional even if not oft-applied requirement that among the collection of evidence used to make findings by an administrative agency, there must be at least one item that is not uncorroborated hearsay. The remainder and even the most compelling of the evidence may be such hearsay. We also examine the evidence by following the direction that we find to be marked by current caselaw. Under that standard, we are not concerned whether there is among all the evidence at least one nugget that fits courtroom evidentiary standards. The focus instead is on whether the totality of the evidence supporting the decision is probative, reliable, and persuasive.
McClinton, 949 So.2d at 815(¶ 30).
¶ 21. Proceeding now to an examination of the evidence here, we do not address Henry's complaint concerning her direct supervisor, Darryl Thomen, not testifying. That decision rests in the sole discretion of the employer. Such decisions may impact the quality of evidence presented, but the exclusion of Thomen from testifying alone is of no consequence. We also do not address Henry's complaint that she was unable to confront her accusers. The constitutional right to confront accusers is applicable in the context of criminal prosecutions, not administrative agency hearings determining qualifications for benefits. Furthermore, Henry's inability to personally confront the testimony against her is due to her decision not to participate in the hearing.
¶ 22. Henry's allegation that Warden Goff committed perjury is due to the information collected by the claim's examiner. Henry argues that Warden Goff testified that he informed Henry of the correctional facility policies when she was hired. Henry argues that Goff was not the Warden at the time she was hired. The language in that report states in part: "Policy: no [contraband] items allowed and failure to adhere to policy will result in termination: told to claimant verbally at hire by warden along with what is allowed on the [premises]." The report also reflects that Henry denied being told about the policy when hired. However, Henry "admitted to being verbally warned before (no date) for *102 bringing in outside food (by [Warden Goff]) but was never told she could be fired."
¶ 23. The statements to which Henry directs our attention were given by Terry Rogers, an administrative assistant. After a careful reading of the record, we are unable to find any instance that Warden Goff states that he told Henry at the time she was hired about the policies of the correctional facility. The allegation of perjury is of no consequence to this discussion. We now address each reason for Henry's employment termination, whether each reason was supported by substantial evidence, and whether the aggregate of these policy violations qualifies as misconduct.
¶ 24. At the appeal hearing, an interoffice memorandum from Warden Goff to Henry concerning the reasons for her termination was properly admitted. The employer presented four reasons why Henry's employment was terminated. Warden Goff testified that he personally investigated each reason for Henry's termination. He further testified that he filled out incident reports detailing the policy violations but did not submit that documentation to the Department. Warden Goff testified that the decision to terminate Henry was the result of a disciplinary meeting between himself, Thomen, who was Henry's direct supervisor, and two other staff members of the correctional facility. Warden Goff testified that these four staff members comprised a hearing committee. He testified that the decision to terminate Henry was unanimous. Henry's response to Warden Goff rebutting the reasons for her termination was submitted to the appeals referee and made part of the record available for the Board to review.
¶ 25. There was some discrepancy concerning documentation submitted to the appeals referee. Henry had obtained some of Warden Goff's handwritten notes. Henry's representative stated that the Warden must have forgotten the notes in a locked dry goods storage area the day prior to Henry's disciplinary hearing. Warden Goff testified that the notes were part of his personal notebook. He recalled having possession of the notebook just minutes before Henry's disciplinary hearing. He suggested that Henry must have wrongfully taken them off of his desk on the day of the disciplinary hearing. The notes were submitted and became part of the record. Their content has no specific contribution to an examination of the evidence. Henry's letter in response to the disciplinary hearing is not a sworn statement. We now discuss the evidence.
Failure to Adequately Supervise Inmates
¶ 26. The first reason listed for Henry's employment termination was that on January 28, 2005, food and other items were taken out of the kitchen by inmates during Henry's shift. Warden Goff testified that Henry was the kitchen supervisor during the time items were taken out of the kitchen by inmates. The items were located during a shakedown and included raw chicken and tuna meat. The Warden testified that Henry's primary responsibility was to supervise the inmates, including maintaining a visual contact with the inmates to prevent items from being taken out of the kitchen. Henry was not authorized to physically search inmates but was equipped with a radio to call in a security guard at any time Henry suspected something was amiss. The Warden testified that there was a security control room including cameras monitored by a security officer. One of the thirty-two cameras monitored the kitchen. Warden Goff's testimony was that Henry was not exhibiting the required degree of attention to supervising the inmates.
*103 ¶ 27. Henry's job description included that she was "responsible for the supervision of the overall food service program in the absence of the Food Service Director." Henry's representative at the Department's hearing argued that Henry did not have any security duties in her position. The argument presented was that Henry, a non-security employee, was being held responsible for oversights on the part of the security officers on duty. In addition, Henry stated in her rebuttal letter to Warden Goff that some of her duties prevented her from constantly observing inmate kitchen workers. Henry described these additional duties included tasks such as opening locked cabinets to provide needed supplies to the worker inmates and storing leftover food from meals. Between six to twelve inmate workers were assigned to the kitchen.
Installing Unauthorized Computer Programs
¶ 28. The second disciplinary item was that on January 31, 2005, several unauthorized programs were found on the computer in the kitchen office. Warden Goff testified that the computer in the food supervisor's office became dysfunctional due to computer games being placed onto the computer. He testified that Henry and other kitchen staff were warned that at no time should any programs be placed on the computer. Inmates used the computer to complete inventory and other reports. Warden Goff testified that after Henry had received warnings about unauthorized computer use, a history report was generated from the computer. The Warden testified that the report reflected that certain unauthorized games were installed on days Henry had worked. The Warden testified that during the disciplinary hearing Henry admitted to bringing the games into the facility.
¶ 29. Henry's representative argued that Henry was only a "user" on the computer which prevented her from installing programs on the machine. Henry's representative communicated that Henry did admit that she brought in a computer program to trade with another employee. The reason for bringing the program into the facility was to prevent the disk from possibly being destroyed from heat had she left the disk in her car. In her rebuttal letter to the warden, Henry stated that only a "system administrator" had the ability to install programs. She denied ever having programs that were not used for work or that were approved. She stated that the computer in question belonged to Thomen, and that an inmate had been given a password to the computer for use. She concludes that another correctional facility staff person, Lieutenant Tillman, must have installed the program on the computer.
Unauthorized Use of Inmate Worker
¶ 30. The third disciplinary item was that between January 28-30, 2005, Henry allowed an inmate into the kitchen who was not authorized to be in that location at that time. Henry requested permission that a particular inmate be available to help clean the kitchen. Warden Goff testified that Thomen agreed to allow a particular inmate to assist in cleaning the kitchen after 5:00 p.m., but not before that time. Warden Goff testified that the inmate was allowed in the kitchen sometime between 3:00 p.m. to 4:00 p.m., one to two hours prior to the authorized time.
¶ 31. Henry's representative stated that Henry requested that Thomen allow a certain inmate to help out with cleaning the kitchen because the inmate cleaned the kitchen well. He stated that Henry would have already left work at 5 p.m., so having the inmate in the kitchen after this time would not make any sense. Being a former *104 guard at the correctional facility, Henry's representative testified that the control room officer, who would control access to and from the kitchen, is furnished with an inmate worker schedule. Henry's representative was unclear as to who exactly furnished the work schedule.
¶ 32. Henry stated in her rebuttal letter that Thomen informed her that the inmate could clean after the other inmate kitchen workers departed the kitchen. Henry's rebuttal states that "this is normally from [3:00 p.m. to 4:50 p.m.]." Henry asserts in her rebuttal that she has no control over when the inmate kitchen workers show up at the kitchen. Henry has no control over the access doors to and from the kitchen, making it impossible for her to allow the inmate into or out of the kitchen.
Possession of Unauthorized Items
¶ 33. The fourth disciplinary item was that on February 2, 2005, unauthorized items were found on Henry's person while entering the correctional facility. These items included three paperback books and one bottle of flavoring. Henry was allowed to enter the facility in possession of these items but was later terminated in part because of possessing these items. Warden Goff testified that he personally instructed all kitchen staff that the only items they were allowed to bring into the facility included cigarettes for personal use and required daily medication for personal use. The interoffice memo stated that Warden Goff instructed kitchen staff that they could also bring in a snack.
¶ 34. Henry denies that Warden Goff ever informed her that the only authorized items to bring into the facility included cigarettes, medicine, and a snack. Henry concedes that she brought in two books, a magazine, and a bottle of flavoring. She argues that Warden Goff targeted her, as other employees are not reprimanded for bringing in a newspaper and coffee flavoring condiments.
¶ 35. The Board considered this evidence and decided that Henry was terminated for misconduct. Of significance is that Henry never submitted any sworn statement for the Board to review. Despite the contradictory nature of evidence, the Board is the final fact finder. We must not reweigh this evidence, but determine if the decision of the Board is supported with substantial evidence.
¶ 36. There was evidence that Henry was not supervising the inmate workers as closely as required. There was also evidence that Henry possessed unauthorized computer programs at work, possibly causing them to be used on a computer. It is unclear whether Henry had any control over notifying the control room which time a particular inmate would arrive to clean the kitchen. By Henry's own admission she brought items into the facility which Warden Goff testified he instructed Henry not to bring into the facility. As the fact finder, the Board weighs the credibility given to the testimony and evidence. When viewed together, the totality of the incidents suffice as misconduct. The decision of the Board is supported by substantial evidence.
¶ 37. THE JUDGMENT OF THE GEORGE COUNTY CIRCUIT COURT IS AFFIRMED.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.
NOTES
[1] Henry cites section 9-7-1 in her brief. That section is inapplicable to her argument as it relates to judicial elections and terms of court.