BARNES, J.,
for the Court.
¶ 1. The Mississippi Department of Employment Security (MDES) appeals the decision of the Hinds County Circuit Court which found that Franklin Glasper, an unemployment benefits claimant, was not an employee, but an independent contractor, of H & H Electronics (H & H). Finding no error, we affirm.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
¶ 2. On July 30, 2002, Glasper filed an unemployment benefits claim with MDES.[1] In his initial claim for benefits, Glasper reported that he was employed from April 15, 2002, through June 12, 2002, as a satellite installer for Kevin Harbin, who owned H & H. However, no wages were reported for Glasper for unemployment tax purposes by H & H. After investigating the matter, MDES determined that there was an employer/employee relationship between H & H and Glasper; thus, the agency determined that his wages and the wages of all other employees in his class should be reported and unemployment taxes paid. H & H appealed this decision.
¶ 3. After a telephonic hearing on the matter, Timothy Rush, the MDES hearing officer, issued an opinion on April 29, 2003, affirming the MDES decision. H & H appealed to the MDES Board of Review *139 (at that time the Commission), which affirmed the hearing officer’s decision. On August 25, 2003, H & H appealed to the Hinds County Circuit Court. On July 6, 2007, the circuit court reversed the decision of MDES, finding that Glasper was an independent contractor, not an employee ofH&H.
¶ 4. MDES now appeals to this Court, asserting that: (1) the circuit court erred in failing to find the MDES decision was supported by substantial evidence and thus should have been affirmed; (2) the circuit court erred in failing to affirm the MDES decision finding Glasper was an employee of H & H; (3) H & H failed to meet its burden in proving that Glasper was an independent contractor; and (4) the circuit court acted arbitrarily and capriciously in substituting its opinion for that of MDES.
STANDARD OF REVIEW
¶ 5. This Court’s standard of review for administrative appeals is well established. The findings of fact from the MDES Board of Review’s opinion are conclusive in the absence of fraud and if supported by the evidence. Miss. Employment Sec. Comm’n v. PDN, Inc., 586 So.2d 838, 840 (Miss.1991); Miss.Code Ann. § 71-5-531 (Supp.2008). An administrative agency’s conclusions will remain undisturbed unless the agency’s order is: (1) unsupported by substantial evidence, (2) arbitrary or capricious, (3) beyond the scope or power granted to the agency, or (4) in violation of the employee’s statutory or constitutional rights. Miss. Dep’t of Employment Sec. v. Good Samaritan Pers. Servs., 996 So.2d 809, 812(¶ 6) (Miss.Ct.App.2008) (citing Miss. Comm’n on Envtl. Quality v. Chickasaw County Bd. of Supervisors, 621 So.2d 1211, 1215 (Miss.1993)). On appeal, “[a] rebuttable presumption exists in favor of the administrative agency, and the challenging party has the burden of proving otherwise.” Id. (quoting Sprouse v. Miss. Employment Sec. Comm’n, 639 So.2d 901, 902 (Miss.1994)).
ANALYSIS
¶ 6. As all of MDES’s issues relate to whether there was substantial evidence to support MDES’s decision that Glasper was an employee of H & H, we shall discuss them together.
¶ 7. The requirements for an employer-employee relationship to be established are explained in section 71-5-11(J)(14) (Supp.2008) of the Mississippi Code Annotated:
Services performed by an individual for wages shall be deemed to be employment subject to this chapter unless and until it is shown to the satisfaction of the department that such individual has been and will continue to be free from control and direction over the performance of such services both under his contract of service and in fact; and the relationship of employer and employee shall be determined in accordance with the principles of the common law governing the relation of master and servant.
The factors this Court must consider when determining whether an employee-employer or independent contractor relationship exists are as follows:
(1) The extent of control exercised over the details of the work;
(2) Whether or not the one employed is engaged in a distinct occupation or business;
(3) The skill required in the particular occupation;
(4) Whether the employer supplies the tools and place of work for the person doing the work;
*140 (5) The length of time for which the person is employed;
(6) The method of payment, whether by the time or by the job; and
(7) Whether or not the work is a part of the regular business of the employer.
PDN, Inc., 586 So.2d at 841-42 (citing Miss. Employment Sec. Comm’n v. Plumbing Wholesale Co., 219 Miss. 724, 732, 69 So.2d 814, 818 (1954)). In determining whether an individual is an employee or an independent contractor, the central issue is “whether the employer has the right to exercise control over the work of the employee.” Estate of Dulaney v. Miss. Employment Sec. Comm’n, 805 So.2d 643, 646(¶ 13) (Miss.Ct.App.2002).
¶ 8. On MDES’s “workers independent contractor questionnaire,” Glasper indicated he was paid by commission and by the job; his hours and days of work were listed as “any,” and he was not given instructions or directions on the daily performance of his duties. However, Glasper stated that he believed he was an employee of the company because “[he] worked for the company and they cut [his] checks.”
¶ 9. At the telephonic hearing in January 2003, the following individuals participated: Jimmy Taylor, Field Tax Representative for MDES;[2] Harbin; Harbin’s attorney; and Glasper. Information was gathered about Harbin’s business and the installers’ work. H & H is a satellite television installation company, which had been in business since 2001. It holds contracts with multiple companies that sell satellites, such as Radio Shack. Glasper was hired by Harbin, the sole proprietor of the business, to perform installations for H & H. Harbin had five or six individuals working as installers, and he testified that he considered all of these workers to be independent contractors. Harbin testified that Glasper signed an independent contractor agreement upon his hiring, but he not could find the executed copy, only a blank form, which was submitted into evidence.
¶ 10. How the business worked is that Harbin would contact Glasper, or another installer, and provide a work order and the customer’s information, such as preferred time of installation. The installer would then set up a time with the customer to install the satellite. If an installer was busy, Harbin testified he would merely send the order to another installer. Harbin provided the satellite itself and connecting cables. The installer provided all of his own tools. Generally, the installers would call Harbin at the end of each day, at their convenience, to ascertain if any work orders had been placed for the next day. Glasper stated the reason he no longer worked for H & H is that Harbin stopped sending him work.
¶ 11. As far as payment, the installer was paid by the job as follows: fifty dollars per satellite receiver box and seventy dollars for a two-receiver box installation. The customers received free installation when they bought their equipment. The company where the satellite was purchased would pay H & H, and H & H would then pay the installer. Harbin kept a portion of the money paid to H & H by the satellite sales companies. The installers received 1099 tax forms, not W-2s.
¶ 12. Harbin testified there was no set time for the installers’ work schedule. He would merely fax or hand-deliver the work orders to the installers, who would then contact the customers on their own phones, in their own time and work out an *141 installation time. The installers’ only investment in terms of expenses was for their vehicles, cell phone, and tools used on the job. The parties acknowledged there was no workshop at H & H, and Harbin did not provide Glasper a “place to work.” The installers were also required to provide their own independent contractor insurance; Glasper, however, did not carry such insurance because when Harbin hired him, Glasper was in a “bind.” Thus, Harbin told him he could purchase it later. Harbin explained that he did not train installers; he only hired individuals with experience in the business and who were familiar with the national electrical code and its guidelines.
¶ 13. Before the installer was paid by H & H, there was a process of verifying that the installation was complete and the customer was satisfied, which entailed receiving the customer’s signature on the work order stating such. The installer would return the work order to H & H, which would then hold back the installer’s payment for two weeks. If the customer was not satisfied, the installer had to return and remedy the problem. If he did not, another installer was sent, and the original installer’s paycheck would be deducted. Glasper could hire other individuals to assist him in his work if he desired.
¶ 14. The MDES Board of Review adopted the hearing officer’s decision, finding that an employer-employee relationship existed based on the following:
The mere fact that the claimant might have signed an independent contractual agreement does not in any way negate the direction and control that the employer had over the claimant in assigning him his work task and requiring that he adhere to strict guidelines in completing his work before he was compensated. The claimant did not have the freedom to go directly to the source from which the employer was receiving their work orders. The employer, not the residential customer, was paying the claimant a portion of the money that the employer received for installing the satellite equipment. The employer did provide the materials and supplies needed to install the system. The claimant was subject to the control and direction of the employer in the way that the equipment was to be installed and the standards to which he was to adhere to.... It is without dispute that the duties performed by the claimant were an integral part of the employer’s daily operations and services. The mere fact that the claimant may be issued a Form 1099 for tax purposes does not mean the claimant was not subject to this employer or under the conditions of master/servant relationship. The employer reserved the right to exercise control over the end result of the claimant’s job performance by holding the claimant to standards accepted and used by the employer to install the satellite systems. The claimant could not deviate from these standards without recourse from this employer.
¶ 15. We find, however, after studying the record, that MDES’s decision is not supported by substantial evidence. According to the factors enumerated in PDN, Inc., the evidence shows Glasper was acting as an independent contractor, not an employee of H & H. Foremost, Harbin did not exercise any control over the installation of the satellite dishes; he merely took the work orders. If a dish was installed incorrectly, the installer had to correct it at his own expense. Glasper had the freedom to hire subcontractors if he needed assistance. Glasper had specialized training, which was not provided by Harbin, to install the equipment, and he had to meet certain safety and electrical *142 guidelines. Glasper could work for others if he desired, and he made his own schedule. Harbin did not supply tools or a place of work for Glasper, who was employed for approximately two months by Harbin. Glasper was paid by the job by H & H. We find, as did the circuit court, the right of control Harbin exercised over Glasper did not rise to the level of an employer-employee relationship.
¶ 16. We affirm the circuit court’s reversal of the MDES’s decision that Glas-per was an employee of H & H, as there is a lack of substantial evidence in the record to support the MDES’s decision.
¶ 17. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS AFFIRMED.
KING, C.J, LEE AND MYERS, P.JJ., IRVING, GRIFFIS, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.

. Glasper actually filed his claim with the "Mississippi Employment Security Commission,” which was the name of the agency prior to its becoming a department of the executive branch of government.

. Taylor acknowledged that he had never personally spoken with Glasper; he stated that he was testifying solely based on documents that were completed by Glasper. He had no personal knowledge about the facts to which he testified.