MAXWELL, J„
 

 for the Court:
 

 ¶ 1. David Alford signed an “independent contractor agreement” with Sun Vista, Inc. and began work on a construction crew. He later filed a claim for unemployment benefits with the Mississippi Department of Employment Security (MDES), reporting that he was an employee of Sun Vista for about two months during late 2006. The central issue before us is whether Alford was Sun Vista’s “employee” within the meaning of Mississippi Code Annotated section 71 — 5—11(J)(14) (Supp. 2010). Sun Vista does not contend that Alford was an independent contractor. In
 
 *1265
 
 stead, Sun Vista contends that Alford was employed by someone else, Jose Medrano, who also performed construction work for Sun Vista.
 

 ¶ 2. The MDES Board of Review (Board) found that Alford satisfied the statutory criteria and was Sun Vista’s “employee.” The circuit court affirmed. Given the ample testimony and documentary evidence before the Board supporting that Sun Vista employed Alford, we are unable to say the Board’s decision was arbitrary and capricious. We also disagree with Sun Vista that “newly discovered evidence” warrants remanding this case. Thus, we affirm the circuit court’s judgment.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶3. Sun Vista is a company based in Waveland, Mississippi, which builds and renovates homes. Alford signed an “independent contractor agreement” with Sun Vista and worked for them for approximately two months during late 2006. Sun Vista paid Alford $12 per hour for his work. Sun Vista issued Aford a 1099-MISC federal tax form for the year 2006, which shows that Sun Vista paid him $2,629 in compensation.
 

 ¶4. On April 24, 2007, Alford filed a claim for unemployment benefits with MDES claiming wages with Sun Vista. Ater an unsuccessful attempt to locate an account for Sun Vista, the Chief of the Tax Department of MDES (Chief) conducted an investigation to determine whether there had been an employer/employee relationship between Sun Vista and Alford. Following the investigation, the Chief issued a decision finding that Sun Vista had employed Alford.
 

 ¶ 5. On appeal, the administrative judge (AJ) held a telephonic hearing for the purpose of deciding this same question— whether an employer/employee relationship existed between Sun Vista and A-ford. MDES called Noreen Prouty, Status Specialist for the Tax Department, and Larry Ladner, MDES Tax Field Representative. Prouty testified that
 
 Alford
 
 was Sun Vista’s employee. She relied on her department’s investigation and various documents she had received, including an “independent contractor questionnaire” Aford had submitted to MDES. Ladner, who conducted an investigation to determine Aford’s status with Sun Vista, testified that he had recommended to the department that Aford was Sun Vista’s employee. Ladner based his recommendation on his conversations with Aford during the investigation. According to Ladner, Medrano was Alford’s “supervisor” or “foreman,” but his employer was Sun Vista. Though MDES had subpoenaed Aford, he failed to participate in the hearing. Medrano also did not testify.
 

 ¶ 6. Sun Vista called two witnesses, James R. Gurley, the secretary-treasurer of Sun Vista, who allegedly hired Aford, and Jeffrey Armstrong, who worked with Aford under Medrano’s supervision for a particular project. Gurley testified that Aford was Medrano’s employee rather than Sun Vista’s. And he denied that Sun Vista exercised control over Alford’s duties. Armstrong testified that Medrano supervised Aford, but Amstrong knew nothing about the nature of the relationship between Sun Vista and Alford.
 

 ¶ 7. The AJ affirmed the finding of the Tax Department that Aford was an employee of Sun Vista. Therefore, the AJ ordered that Sun Vista register with the Tax Department and pay unemployment insurance taxes on Alford and any other similarly situated employees. Sun Vista appealed to the Board. The Board adopted the AJ’s findings of fact and opinion and affirmed.
 

 
 *1266
 
 ¶ 8. On appeal to the Hinds County Circuit Court, Sun Vista requested reversal of the Board’s decision or, alternatively, that the case be remanded based on “newly discovered evidence.” This “newly discovered evidence” included Medrano’s “independent contractor agreement” with Sun Vista and an “affidavit,” purportedly signed by Medrano but not notarized.
 

 ¶ 9. After conducting a hearing and reviewing briefs filed by the parties, the circuit court affirmed the Board’s decision. On appeal to this court, Sun Vista asserts the same issues it raised in the circuit court. First, Sun Vista argues the Board’s decision that Alford was its employee is arbitrary and capricious. Second, Sun Vista alternatively requests that we remand the case based upon “newly discovered evidence.”
 

 STANDARD OF REVIEW
 

 ¶ 10. The standard of review for administrative appeals is limited.
 
 Miss. Employment Sec. Comm’n v. PDN, Inc.,
 
 586 So.2d 838, 841 (Miss.1991). We will not disturb the Board’s decision unless it: (1)is not supported by substantial evidence, (2) is arbitrary or capricious, (3) falls beyond the scope of authority granted to the agency, or (4) violates a constitutional right.
 
 EMC Enter., Inc. v. Miss. Dep’t of Employment Sec.,
 
 11 So.3d 146, 150 (¶ 9) (Miss.Ct.App.2009). “[T]he findings of the Board as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law.” Miss.Code Ann. § 71-5-531 (Supp. 2010).
 
 See also Williams v. Miss. Employment Sec. Comm’n,
 
 395 So.2d 964, 966 (Miss.1981) (interpreting the word “evidence” used in section 71-5-531 as “substantial evidence”). “On appeal, ‘a rebut-table presumption exists in favor of the administrative agency, and the challenging party has the burden of proving otherwise.’ ”
 
 Miss. Dep’t of Employment Sec. v. Harbin,
 
 11 So.3d 137, 139 (¶ 5) (Miss.Ct.App.2009) (quoting
 
 Sprouse v. Miss. Employment Sec. Comm’n,
 
 639 So.2d 901, 902 (Miss.1994)).
 

 DISCUSSION
 

 I. Employer/Employee Relationship
 

 ¶ 11. According to Mississippi Code Annotated section 71 — 5—11(J)(14):
 

 Sendees performed by an individual for wages shall be deemed to be employment subject to this chapter unless and until it is shown to the satisfaction of the department that such individual has been and will continue to be free from control and direction over the performance of such services both under his contract of service and in fact[.]
 

 This section further instructs “the relationship of employer and employee shall be determined in accordance with the principles of the common law governing the relation of master and servant.”
 
 Id.
 
 Under common law, the following factors are considered in assessing whether an employer/employee relationship exists:
 

 (1) The extent of control exercised over the details of the work;
 

 (2) Whether or not the one employed is engaged in a distinct occupation or business;
 

 (3) The skill requirement in the particular occupation;
 

 (4) Whether the employer supplies the tools and place of work for the person doing the work;
 

 (5) The length of time for which the person is employed;
 

 (6) The method of payment, whether by the time or by the job;
 

 (7) Whether or not the work is part of the regular business of the employer.
 

 
 *1267
 

 PDN,
 
 586 So.2d at 841-42 (citing
 
 Miss. Employment Sec. Comm’n v. Plumbing Wholesale Co.,
 
 219 Miss. 724, 732, 69 So.2d 814, 818 (1954)).
 

 ¶ 12. “The primary factor is the right to or degree of control.”
 
 Id.
 
 at 842. Yet a worker “may be actually under slight supervision or control but still be an employee where the right of control existed and the service performed was a part of the regular business of the alleged employer.”
 
 Miss. Employment Sec. Comm’n v. Total Care, Inc.,
 
 586 So.2d 834, 837 (Miss.1991) (citing
 
 Miss. Employment Sec. Comm’n v. Logan,
 
 248 Miss. 595, 600, 159 So.2d 802, 804 (1964)).
 

 ¶ 13. The test for employee status is considered on a case-by-case basis. It is a flexible inquiry with “no talismanic formula” to be mechanically applied.
 
 Total Care,
 
 586 So.2d at 837-38. The burden of proof is on the party attempting to prove a worker was
 
 not
 
 an employee.
 
 PDN,
 
 586 So.2d at 840.
 

 A. Board’s Application of Common-Law Factors
 

 ¶ 14. The Board adopted the AJ’s opinion finding that an employer/employee relationship existed between Sun Vista and Alford under section 71 — 5—11(J)(14). Though the AJ did not perform a factor-by-factor analysis, his findings and opinion touched on many of the applicable factors.
 

 ¶ 15. First, the AJ found Sun Vista determined Alford’s duties. Alford was required to “dig the footings for a concrete driveway” and perform various other assigned duties. Second, Alford does not have a license to engage in the type work he performed and does not advertise his services to the public. Third, Sun Vista hired Alford to perform general construction work. Fourth, Sun Vista supplied Alford with some tools, while Alford himself supplied the rest. The AJ made no findings regarding whether Sun Vista supplied a place of work. Fifth, although the AJ made no findings regarding the length of employment, it is not disputed that Alford’s relationship with Sun Vista lasted for approximately two months during late 2006. Sixth, Sun Vista paid Alford $12 per hour for his services. Sun Vista did not require Alford to submit a bid. Seventh, the AJ noted that Alford performed construction labor, which was integral to the regular operation of Sun Vista.
 

 ¶ 16. Several other considerations led the AJ to conclude Sun Vista controlled or had a right to control Alford. Sun Vista set Alford’s work hours as Monday through Friday from 8:00 a.m. to 4:00 p.m. and required Alford to take a lunch break around 11:30 a.m. or 12:00 p.m. Also, Alford was prohibited from delegating his duties or hiring a substitute to perform his work. Alford did not bid on his work and was not allowed to determine his pay. Further, the AJ concluded that Sun Vista exercised control through Alford’s supervisor, Medrano.
 

 ¶ 17. Sun Vista contends these findings are arbitrary and capricious, and Alford was neither an independent contractor nor an employee of Sun Vista. Rather, it claims Alford was an employee of Medra-no, who allegedly was an independent contractor of Sun Vista. Sun Vista argues the proof is so overwhelming that Medrano actually employed Alford that it cannot be said that the Board’s decision is supported by substantial evidence.
 

 ¶ 18. We disagree. The Board’s decision is supported by ample evidence that Alford performed a service for Sun Vista for wages. Further, Sun Vista has not sufficiently shown Alford was free from its control and subject instead to Medrano’s control.
 
 See
 
 Miss.Code Ann. § 71-5-11(J)(14). The “independent contractor questionnaire” filled out for MDES by Alford was admitted into evidence. Alford’s
 
 *1268
 
 questionnaire supports the findings of the Board, as does the testimony of MDES employee Ladner, who interviewed Alford. Also, Sun Vista’s representative, Gurley, admitted his company provided workers’ compensation coverage for Alford and did not require Alford to carry his own property or liability insurance. Though some of Gurley’s testimony contradicts the AJ’s findings, we are precluded from re-weighing the facts that were before the Board. We are instead limited to determining whether the Board’s decision was based upon substantial evidence.
 
 Henry v. Miss. Dep’t of Employment Sec.,
 
 962 So.2d 94, 104 (¶ 35) (Miss.Ct.App.2007). We find that it was.
 

 ¶ 19. While the “independent contractor agreement” between Sun Vista and Alford suggests that Alford was an independent contractor, the Mississippi Supreme Court has emphasized:
 

 [T]he terms of the contract between the parties are only a part of the inquiry.... [E]ven though the contract gives no right of control, the worker will be found [an employee] if there is substantial control in fact.... The true test incorporates a consideration of all of the facts and the economic realities.
 

 Total Care,
 
 586 So.2d at 838. Here, there is substantial evidence supporting the Board’s decision that Sun Vista actually exercised control over Alford, despite the terms of the contract between them. Similarly, the Board found the “fact that the company issued [Alford] a Form 1099 does not change the fact that a master/servant relationship existed.” Again, this is but one consideration in the overall assessment of the employer’s control over the alleged employee’s means of performance. The weight of the evidence shows Alford was an employee rather than an independent contractor, as reflected in the AJ’s findings. Indeed, Sun Vista does not even contend that Alford was an independent contractor.
 

 ¶ 20. Finally, Sun Vista argues the facts before us dictate the same result as in
 
 Harbin,
 
 where we found that the Board’s determination that an employer/employee relationship existed was arbitrary and capricious.
 
 Harbin,
 
 11 So.3d at 142 (¶ 16). The
 
 Harbin
 
 claimant worked for a satellite-television-installation company as an installer.
 
 Id.
 
 at 140- (¶ 9). He set his own hours, was paid by the job per installation, had no set time for his work schedule, and provided all of his own tools.
 
 Id.
 
 at (¶¶ 10-12). The installers used their own phones to contact customers to coordinate an installation time.
 
 Id.
 
 at 140^11 (¶ 12). They were also required to provide their own independent-contractor insurance, though the claimant had not purchased it because he was in a “bind.”
 
 Id.
 
 at 141 (¶ 12). The claimant also had obtained specialized training prior to working for the company.
 
 Id.
 
 at 141-42 (¶ 15).
 

 ¶ 21. In contrast, Alford was paid hourly. Evidence supported that Sun Vista set his work hours and provided some of his tools. There was no evidence of Alford’s interaction with customers. Alford was not required to provide his own insurance. Finally, Sun Vista hired Alford to perform general construction work, which required no specialized training. For these reasons, we find
 
 Harbin
 
 distinguishable from this case.
 

 B. Hearsay Evidence
 

 ¶ 22. Sun Vista argues that the Board’s entire decision rests on uncorroborated hearsay testimony and does not satisfy the substantial-evidence standard. The supreme court has explained that “substantial evidence” means “such relevant evidence as reasonable minds might accept as adequate to support a conclusion or to put it simply, more than a mere
 
 *1269
 
 scintilla of evidence.”
 
 Hooks v. George County,
 
 748 So.2d 678, 680 (¶ 10) (Miss.1999) (internal quotations omitted). But the supreme court has held that “uncorroborated hearsay is not substantial evidence, even though hearsay is admissible in an administrative proceeding.”
 
 Williams,
 
 395 So.2d at 966 (finding Board’s decision denying benefits based solely on an employer’s letter was not supported by substantial evidence).
 

 ¶ 28. We find this issue is procedurally barred for Sun Vista’s failure to object to the testimony when offered to the Board.
 
 See Pub. Employees’ Ret. Sys. v. Freeman,
 
 868 So.2d 327, 330 (¶ 9) (Miss.2004). Procedural bar aside, we cannot overlook that Sun Vista’s representative, Gurley, provided direct testimony that Sun Vista issued a 1099 form to Alford, paid workers’ compensation insurance on Alford, and did not require him to provide his own property or liability insurance—all of which tend to undercut Sun Vista’s claim that Medrano employed Alford. Thus, we disagree with the notion that MDES’s case rests on uncorroborated hearsay.
 

 ¶24. For these reasons, we find the Board was not arbitrary or capricious in determining Alford was Sun Vista’s employee.
 

 II. Remand
 

 ¶ 25. Sun Vista also asks this court to remand the case for consideration of “newly discovered evidence,” pointing to two documents. The first is labeled an “affidavit,” which bears the purported signature of Medrano but is not notarized. The so-called “affidavit” states among other things that Medrano employed Alford. The second document is an “independent contractor agreement” bearing the signatures of Medrano and Gurley. It is quite similar to the contract executed between Gurley and Alford.
 

 ¶ 26. This court has found Mississippi Rule of Civil Procedure 60(b) applicable to administrative law decisions.
 
 Herring Gas Co., Inc. v. Miss. Employment Sec. Comm’n,
 
 944 So.2d 943, 949 (¶ 27) (Miss.Ct.App.2006). Rule 60(b) provides for relief from a final judgment or decision based upon the discovery of new evidence. A Rule 60(b) motion may only be granted when:
 

 (1) the evidence was discovered following the trial; (2) due diligence on the part of the movant to discover the new evidence is shown or may be inferred; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; [and] (5) the evidence is such that a new trial would probably produce a new result.
 

 Cuffee v. Wal-Mart Stores, Inc.,
 
 977 So.2d 1187, 1191-92 (¶ 18) (Miss.Ct.App.2007). We review the grant or denial of a Rule 60(b) motion for abuse of discretion.
 
 Id.
 
 at 1191 (¶ 14).
 

 ¶ 27. The proper course would have been for Sun Vista to file a Rule 60(b) motion, which it did not. Yet we need not examine the procedural defaults because Sun Vista cannot meet this standard.
 

 ¶ 28. Black’s Law Dictionary defines an affidavit as “[a] voluntary declaration of facts written down and sworn to by the declarant before an officer authorized to administer oaths, such as a notary public.” Black’s Law Dictionary 62 (8th ed.2004). This Court has reasoned that an unsworn “affidavit” is “merely a piece of paper with the word ‘affidavit’ as its title.”
 
 Thomas v. Greenwood Leflore Hosp.,
 
 970 So.2d 273, 277 (¶ 19) (Miss.Ct.App.2007). Thus, a standard form affidavit that is not sworn “cannot create an issue of material fact” for the purposes of summary judgment.
 
 Id.
 
 The “affidavit” relied on by Sun Vista is not sworn, which renders its reliability questionable.
 

 
 *1270
 
 ¶ 29. Sun Vista also seeks review of Medrano’s “independent contractor agreement.” This document is essentially the same agreement Alford signed with Sun Vista. We fail to see how Medrano’s purported contract with Sun Vista sheds light on Alford’s relationship with Sun Vista. The document might support (though certainly not determine) that Medrano was an independent contractor, but it in no way establishes Sun Vista’s claim that Medrano employed Alford.
 

 ¶ 30. We find the two documents produced by Sun Vista neither material nor likely to alter the outcome of the Board’s determination. Therefore, we find no abuse in the circuit court’s refusal to remand the case.
 

 ¶ 31. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ„ CONCUR. CARLTON, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.